**ADKINS INVESTMENTS, INC., Paul H. Adkins, Marie Adkins, Dennis Voyles and Angela Voyles, Appellants–Plaintiffs/Counterclaim Defendants,**

v.

**JACKSON COUNTY REMC, Appellee–Defendant/Counterclaim Plaintiff.**

No. 88A01–9904–CV–123

Court of Appeals of Indiana.

July 12, 2000.

Rehearing Denied Aug. 31, 2000.

John W. Mead, Mead, Mead & Clark, P.C., Salem, Indiana, Attorney for Appellants.

Andrew Wright, Andrew Wright, P.C., Salem, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Plaintiffs–Counterclaim Defendants Adkins Investments, Inc., Paul H. Adkins, Marie Adkins (the "Adkins"), Dennis Voyles and Angela Voyles (the "Voyles") (hereinafter referred to collectively as "Appellants") appeal the trial court's permanent injunction order in favor of Appellee–Defendant–Counterclaim Plaintiff Jackson County Rural Electric Membership Cooperative (hereinafter referred to as "REMC").

REMC cross-appeals from the trial court's order, which fined REMC $1,000.00, and found it in contempt of court for violating the trial court's Temporary Restraining Order.

We affirm.

### ISSUES

On appeal, Appellants raise two issues for our review, which we consolidate and restate as follows: whether the trial court's findings of fact and conclusions of law with respect to its Permanent Injunction Order were clearly erroneous because they were not supported by the evidence.

On cross-appeal, Appellee raises two issues for our review, which we restate as follows:

1. Whether there was sufficient evidence to support the trial court's finding that REMC was in contempt of court for violating a Temporary Restraining Order by disconnecting electrical service to appellants' property.

2. Whether the Voyles stated a claim for damages to personal property.

### FACTS AND PROCEDURAL HISTORY

REMC is an Indiana corporation organized under the provisions of Ind.Code § 8–1–13 for the purpose of providing utility electrical service to its members located in South Central Indiana, including much of Washington County.

Sometime in the 1970s, REMC constructed an electrical line into a recreational vehicle resort development in Washington County, Indiana, known as Seldom Seen Lake. Seldom Seen Lake has two entrances, located between State Road 135 on the west and Delaney Creek Valley on the east. The electric line serving Seldom Seen Lake enters the property from the west along the public road, State Road 135, and then the road becomes a private easement belonging to Appellants. The

electrical line continues across the property until it exits Seldom Seen Lake along Delaney Creek Road.

In 1989, Paul Adkins purchased approximately 500 acres of the Seldom Seen Lake property, and he became a member of REMC in order to receive electrical service. Paul Adkins then transferred part of the real estate to Adkins Investment, Inc., which also became a member of REMC.

Angela Voyles is the daughter of Paul and Marie Adkins, and Dennis is Angela's husband. Although the Voyles are neither owners of real estate on the Seldom Seen Lake property nor members of REMC, they are residents and full-time occupants of real estate on the property owned by Adkins Investment, Inc.

When Adkins purchased the Seldom Seen Lake property, there was a double lock mechanism at the west entrance, allowing access for both REMC and Adkins. Sometime in 1991, Adkins removed the double lock from the west gate and refused to provide REMC with a key. From that point until the Fall of 1993, REMC used the east entrance to the property for access to its utility lines.

In the Fall of 1993, a culvert under the east entrance washed out, making the roadway impassable. The culvert was never repaired or replaced. The east entrance lies on a roadway that is common access for individual lot owners on Seldom Seen Lake, while the west entrance is a private easement owned by Appellants.

On September 19, 1996, Appellants suffered an interruption of service. The Voyles contacted REMC about the outage, but REMC refused to restore service until it was provided with a key to the locked west gate.

On September 24, 1996, Appellants filed a Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Damages against REMC for interrupting their service without notice and refusing to restore it. That same day, the trial court issued a Temporary Restraining Order against REMC, ordering it to restore service to Appellants and prohibiting it from interrupting or terminating electric utility service to Appellants for any reason without notice. REMC was also required to enter Appellants' property and make necessary repairs to restore service to Appellants. Further, the court ordered that the west gate was to remain unlocked for access by REMC.

On September 26, 1996, Appellants' service was again interrupted, and on October 21, 1996, Appellants filed a Citation for Contempt against REMC.

On October 17, 1996, REMC filed a Counterclaim for Preliminary Injunction and Permanent Injunction, requesting the court to enjoin Appellants from interfering with its easement and access rights to Appellants' property.

On October 22, 1996, and December 13, 1996, the trial court held a hearing on the Temporary Restraining Order and the parties' Preliminary Injunction motions. On June 9, 1997, the trial court entered its Preliminary Injunction Order, enjoining Appellants from locking the west gate, and enjoining REMC from terminating Appellants' service without notice.

On June 4, 1998, and July 21, 1998, the trial court held a hearing on Appellants' Complaint and REMC's Counterclaim for Permanent Injunction. On October 30, 1998, the trial court entered a Permanent Injunction, enjoining Appellants from locking the west gate, and ordered them to either double lock the gate and provide REMC with a key or leave the gate unlocked.

On November 30, 1998, Appellants filed a Motion to Correct Errors, and the trial court granted their motion and amended its Permanent Injunction on March 2, 1999. The amended Permanent Injunction order left in place the injunction against Appellants regarding the west gate. However, the amended order found that REMC was in contempt of court for violating its Temporary Restraining Order for interrupting Appellants' service without

notice on September 26, 1996. The trial court fined REMC $1,000.00 and scheduled a hearing on Appellants' request for damages as a result of REMC's refusal to restore service.[1] Appellants now appeal the trial court's Permanent Injunction Order challenging its order with respect to the west gate, and REMC cross-appeals, challenging its contempt of court order and scheduling of a hearing on Appellants' damages. Additional facts will be supplied when necessary.

## DISCUSSION AND DECISION

### I. *Permanent Injunction Order*

Appellants argue that the trial court erred by issuing a Permanent Injunction Order in favor of REMC. Specifically, Appellants claim that the trial court erred in its Findings of Fact No. 18 and No. 20, and Conclusions of Law No. 41, 42, 43, 44, and 45.

At Appellants' request in their Motion to Correct Errors, the trial court entered amended findings and conclusions thereon in support of its judgment. When a party has requested special findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A), the reviewing court must first decide whether the evidence supports the findings and second whether the findings support the judgment. *Panhandle Eastern Pipe Line Co. v. Tishner*, 699 N.E.2d 731, 736 (Ind.Ct.App.1998). The findings and judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Temby v. Bardach*, 699 N.E.2d 775, 777 (Ind.Ct.App.1998). The judgment is clearly erroneous when it is not supported by the findings of fact and the conclusions of law entered on the findings. *Id.* In making these determinations we shall neither reweigh the evidence nor judge witness credibility but consider only the evidence and the inferences flowing therefrom, which are most favorable to the judgment. *Panhandle*, 699 N.E.2d at 736.

On March 2, 1999, the trial court granted Appellants' Motion to Correct Errors, and ordered a Permanent Injunction as follows:

1. That counterclaim/defendants, Paul H. Adkins, Adkins Investment, Inc., and their employees, agents and persons acting in concert with them are hereby restrained and prohibited from denying reasonable access to the Jackson County REMC to their premises ... for the purpose of placing, constructing, operating, repairing, maintaining, relocating and replacing electrical transmission or distribution lines or systems ... pursuant to an easement recorded in Deed Book D–7, page 105, in the Office of the Recorder of Washington County, Indiana.

2. That the counterclaim/defendants shall have the option of leaving the west gate ... unlocked at all times or installing a double lock mechanism on the west gate of their premises and providing the counterclaim/plaintiff with a key thereto for access to the property for the exclusive purpose of inspecting, maintaining, constructing, operating, repairing and relocating or replacing electrical transmission or distribution lines or systems and appurtenances thereto on the premises of the counterclaim/defendants.

3. That if the counterclaim/defendants elect to install the double lock mechanism on the west gate on their premises, then the counterclaim/plaintiff shall not distribute or provide its key to the double lock mechanism of the counterclaim/defendants to any persons or legal entities other than their own employees or independent contractors for any purpose without the written consent of the counterclaim/defendant, Paul H. Adkins.

(R. 28–30).

### A. *Finding No. 18*

First, Appellants argue that the trial court's Permanent Injunction Order is

---

**1.** There is no evidence in the record regarding whether this hearing has been or will be held.

in error because the Record is void of evidence to support Finding of Fact No. 18, which is as follows:

18. That the evidence indicates that Paul H. Adkins and his tenants, agents or employees are not always readily or reasonably available to provide access to their premises to the Jackson County REMC to make timely repairs or replacements for the servicing of power outages or other emergency conditions.

(R. 20).

Specifically, Appellants contend that there is no evidence of an instance when REMC attempted to contact them and they were not available to allow REMC access to their premises through the west gate. In addition, Appellants argue that on instances when REMC arranged for someone to be at the west gate in order to gain access to Appellants' premises, someone was always present at the gate to do so. Finally, Appellants claim the Record reflects that from August 1994 until September 1996, REMC entered Appellants' premises via the east entrance without contacting them, and that sometimes it was not necessary for REMC to even enter Appellants' premises in order to make timely repairs or replacements for the servicing of power outages.

However, the trial court's Finding No. 18 does not state that the Appellants were not available when REMC requested entrance via the west gate; instead, it states that the Appellants "are not always readily or reasonably available to provide access." (R. 20). In addition, the Record reveals that Adkins owned 500 to 600 acres of land on the Seldom Seen Lake property, but he did not reside at the premises and was only present periodically. However, the Voyles did live on the property, but both Angela and Dennis did not work on the premises. Therefore, during the day, there often was no one present on Adkins' property to provide REMC access to the premises.

Nevertheless, the Appellants claim that if REMC needed to gain access to the property via the west gate when no one was present, REMC could leave a message on the Voyles' answering machine. However, in the event of a power outage, an answering machine would not operate.

Finally, the evidence reveals that following the power outage that occurred on September 19, 1996, to twenty-seven (27) customers including the Appellants, REMC restored power to every customer within an hour, except the Appellants. The Voyles testified that they both arrived home several hours after the power outage. Therefore, we find that sufficient evidence exists in the Record to affirm the trial court's Finding No. 18 that Appellants are not always readily or reasonably available to provide REMC access to their premises to service power outages.

### B. *Finding No. 20*

██ Next, Appellants argue that the trial court's Permanent Injunction Order is in error because they did not have a duty to repair the washed out culvert at the east entrance, and therefore, Finding of Fact No. 20 is clearly erroneous. Finding No. 20 is as follows:

20. That a culvert located on or near the real estate of the counterclaim/defendants where this access road crosses a tributary of Delaney Creek washed out in the Fall of 1993 and that the counterclaim/defendants have not replaced, installed or participated in the replacement or installation of a new culvert so as to provide access to the east side of their premises by this roadway.

(R. 20).

██ Specifically, Appellants contend that Adkins owns the servient estate on half the roadway and REMC, as the owner of the dominant estate, has the duty to make repairs and maintenance to the easement. Therefore, Appellants concede that they did not repair or replace the culvert, but argue that they are under no obligation to make repairs to the easement because the dominant estate owner of an easement bears the duty to maintain it

unless there is a special or express agreement to the contrary. The Appellants have correctly stated that the owner of an easement must generally bear the entire cost of maintaining it, absent an express agreement to the contrary. *Larabee v. Booth,* 463 N.E.2d 487, 492 (Ind.Ct.App. 1984). However, when the Appellants applied for membership to REMC, they agreed to be bound by the rules and regulations of REMC as a condition of membership. Specifically, pursuant to the Rules and Regulations, the Appellants agreed to the rule regarding "Right of Way and Access," which provides in relevant part as follows:

Each member shall grant, as a condition of membership, without charge to the Rural Electric, necessary easements over, under and across land owned by the member, for transmission and distribution lines of the Rural Electric.

* * * *

b. Suitable easements shall be granted for extension and maintenance of service to other members as well as for the member's own requirements.

c. Any applicant for membership service shall be required to secure to, and for, the Rural Electric, all necessary and convenient rights of way and to pay the costs incident thereto.

d. Duly authorized representatives of the Rural Electric shall have the right of ingress to and egress from the premises of members at all reasonable times, for the purpose of reading, testing, inspection, repairing, replacing or removing its meters or other property, or inspecting the member's installation or for the purpose of removing its property on the termination of its contract or on discontinuance of service for whatever reason.

(R. 468). In addition, Appellants agreed to the rule regarding "Right–of–Way Easement Standards and Maintenance," which states in relevant part as follows:

An applicant for membership, who requires a new installation for electric service on his property, will be asked to execute and submit a legal easement, to permit crossing and entering upon his property for installing and maintaining necessary poles and electric lines and keeping them clear of trees, brush, etc.

* * * *

Granting of right-of-way is one economy in electric line construction which helps keep the cooperative's electric rates low and service dependable.

* * * *

The standard right-of-way for underground lines includes clearing and maintaining a path to a minimum distance of ten feet on each side of the electrical conductors, for construction and repairs, and provides for necessary access.

(R. 448).

Therefore, there is sufficient evidence in the Record to support the trial court's finding that the Appellants did not replace, install or participate in the replacement of installation of a new culvert so as to provide access to the east side of their premises because pursuant to the REMC's rules and regulations, the Appellants had agreed to maintain the easement to provide REMC access to the premises in order to service the electric lines.

### C. *Conclusion No. 41–45*

Appellants argue that the trial court's Permanent Injunction Order was in error because Conclusions of Law Nos. 41–45 are clearly erroneous. Specifically, Appellants contend that Conclusions Nos. 41–45 improperly interpret REMC's easement by expanding the terms of the easement to require the Appellants, as REMC's customers, to provide REMC safe, reliable, immediate and unrestricted access to its property, including access to an unlocked or double-locked gate. Therefore, we must determine whether in its Conclusions of Law Nos. 41–45, the trial court properly interpreted REMC's easement as defined in its Rules and Regulations.

The trial court's Conclusions of Law Nos. 41–45 are as follows:

41. That the counterclaim/defendants have interfered with the right of ingress and egress of the Jackson County REMC to their premises for the purpose of reading, testing, inspecting, repairing, or removing its meters or other property by restricting access to said premises by locking a gate across the roadway and to the west side of the counterclaim/defendants' property and not providing the counterclaim/plaintiff with a key thereto.

42. That the stream ford and farm lane crossing over the real estate of Ralph Dickmeyer (now deceased) located to the east of the premises of the counterclaim/defendants is not a suitable easement for use of the Jackson County REMC as it does not afford a safe, reliable and immediate access to the premises of the counterclaim/defendants for the making of either routine inspections and maintenance or emergency repairs.

43. That the roadway running from State Road 135 to the west side of the real estate of the counterclaim/defendants' is a suitable easement for use of the Jackson County REMC as it affords safer and more reliable and immediate access to the premises of the counterclaim/defendants for the making of either routine inspections and maintenance or emergency repairs.

44. That the counterclaim/defendants, Paul H. Adkins and Adkins Investment, Inc., have violated the Rules and Regulations of the Jackson County REMC in regard to providing the right of ingress and egress to its premises for the service of facilities of the Jackson County REMC.

45. That the counterclaim/defendants, Paul H. Adkins and Adkins Investment, Inc., violated the Rules and Regulations of the Jackson County REMC in regard to providing suitable easement for use of the Jackson County REMC to its premises for safe, reliable and immediate access for the making of either routine inspections and maintenance or emergency repairs.

(R. 24–26).

 Appellants argue that although REMC contends that it is entitled to unrestricted access to include the unlocked or double-locked gate, REMC concedes that neither its rules and regulations nor its easement provides for the unlimited and unrestricted right to enter its customers' property at any time. Appellants further claim that REMC's rules and regulations do not contain a statement with respect to a double-locked gate.

At trial, Paul Adkins testified that the west side entrance to the Seldom Seen Lake property is his private easement that he has maintained with a locked gate. Adkins further testified that REMC owned a common easement on the east side of the Seldom Seen Lake property that was in existence at the time he purchased the property. The Record reveals that this common easement consists of three separate easements contained in three separate deeds, conveying REMC the right to enter upon the lands to "place, construct, operate, repair, maintain, relocate and replace thereon ... an electric transmission or distribution line or system ..." (R. 175–179). Nevertheless, REMC did not own an easement to enter the Seldom Seen Lake property from the west side, where Adkins owned a private easement.

However, the issue concerns the proper construction to be given to REMC's Rules and Regulations with respect to its right of way to the Seldom Seen Lake property. Specifically, we must determine whether the trial court properly construed the Rules and Regulations to which Appellants agreed when they became REMC customers, in order to conclude that REMC could access the Seldom Seen Lake property via Adkins' private easement on the west side of the property. Although the Record reveals three separate deeds providing an easement to REMC by express grant on the east side of the property, REMC's access to the west side of the property is

not created by these deeds, but instead by Appellants' agreement expressly granting REMC a necessary and suitable easement to the property as an REMC customer.

██ The nature of an easement created by an express agreement or grant must be determined by the provisions of the instrument creating the easement. *Indiana Broadcasting Corp. v. Star Stations of Indiana*, 180 Ind.App. 207, 388 N.E.2d 568, 571 (1979). It is the duty of the court, in construing an instrument creating an easement, to ascertain and give effect to the intention of the parties, which is determined by a proper construction of the language in the instrument from an examination of all the material parts thereof. *Brock v. B & M Moster Farms, Inc.*, 481 N.E.2d 1106, 1108 (Ind.Ct.App.1985), *superseded by statute on other grounds*. If possible, meaning must be given to all parts of the agreement to remain consistent with the rest of the agreement. *Indiana Broadcasting Corp.*, 388 N.E.2d at 571.

██ Fundamental rules of construction guide us here. The nature of a particular easement should be gleaned by contemplating the purpose to be served by the easement. *See Brock*, 481 N.E.2d at 1108. In the case at hand, the purpose of REMC is not ambiguous, providing in relevant part as follows:

> [T]o serve the electric energy needs of its members fully, equitably, and reliably at a high level of service consistent with sound economy and good management.

> The following Rules and Regulations are general policies which apply to each and every member or applicant for membership. They are to be considered a part of every contract made by the Rural Electric, unless modified by special terms written therein, and govern all classes of service.

(R. 467). In addition, the plain language of the Rules of Regulations created a necessary and suitable easement for REMC to maintain and service its customers' electricity needs.

However, Appellants argue that REMC's easement created pursuant to its Rules and Regulations does not state that REMC is entitled to unrestricted access to their property. Instead, the Rules and Regulations entitle REMC access to its customers' property at all reasonable times. In addition, Appellants contend that REMC has not established that its use of the east entrance is unreasonable. Specifically, Appellants claim that Adkins, pursuant to the Rules and Regulations, is required to provide REMC ingress to and egress from his property at reasonable times, and that he has satisfied this burden by providing access to the property via the east entrance. Further, Appellants argue that it is REMC's burden to establish that access to the property via the east entrance is unreasonable, REMC has not done so, and instead has arbitrarily decided to use the west entrance rather than the east entrance.

REMC does not claim and the trial court did not conclude that REMC has unlimited and unrestricted access to Appellants' property. Instead, REMC has access to Appellants' property limited to the restricted purpose of a necessary, suitable, safe, and reliable easement, providing REMC with the right of ingress to and egress from Appellants' property in order to maintain and service Appellants' electrical service. When read together, Conclusions Nos. 41–45 conclude in summary as follows: 1) The east entrance was not a suitable easement for REMC because it did not afford REMC safe, reliable and immediate access to Appellants' property; 2) The west entrance was a suitable easement for REMC because it afforded REMC a safer and more reliable and immediate access to Appellants' property; 3) Appellants interfered with REMC's right of ingress to and egress from their property by locking the gate at the west entrance without providing REMC with a key; and therefore, 4) Appellants violated REMC's

Rules and Regulations by failing to provide REMC the right of ingress egress, and by failing to provide REMC a suitable easement to their property for safe, reliable and immediate access.

We find that the Record contains sufficient evidence to support the trial court's Conclusions Nos. 41–45, including: extensive photographs of the Seldom Seen Lake property depicting both the east and west entrances, testimony of both REMC and Appellants' witnesses, and evidence that upon a joint motion by the parties, the trial court visited the Seldom Seen Lake property.

First, REMC's employees testified regarding the nature and size of the equipment used to provide maintenance and service to the electric service at Seldom Seen Lake property. Further, the Rules and Regulations stated and REMC's employees testified that safety is a primary consideration of REMC. Appellants also called a non-party witness who testified that after the culvert was washed out, he no longer towed his camper into Seldom Seen Lake via the east entrance due to safety concerns. Therefore, sufficient evidence existed for the trial court to conclude that the east entrance was not a suitable easement for REMC because it did not afford safe, reliable and immediate access to the Seldom Seen Lake property.

Second, although REMC's Rules and Regulations do not specify the location of its easement or the means of ingress to and egress from the property, because the west entrance is the only other entrance to the property, and if the east entrance is not a suitable easement, then it is reasonable to infer that the west entrance is a suitable easement.

Third, there is sufficient evidence to support the trial court's conclusion that Appellants interfered with REMC's right to ingress and egress when they locked the only safe, reliable and immediate access to the property.

Finally, the evidence reveals that pursuant to the Rules and Regulations to which Appellants agreed, they were required to secure necessary and suitable easements to provide REMC the right of ingress to and egress from their property.

Therefore, we find sufficient evidence to support the trial court's Conclusions of Law Nos. 41–45.

## II. *Contempt of Court*

On cross-appeal, REMC argues that the trial court erred in concluding that it was in contempt of court for violating the Temporary Restraining Order it issued against REMC on September 24, 1996. Specifically, REMC contends that there was insufficient evidence to conclude that REMC was in contempt of court because it did not willfully disobey the trial court's Temporary Restraining Order.

 The determination of whether a party is in contempt of court is a matter within the trial court's discretion and the trial court's decision will only be reversed for an abuse of that discretion. *Williams v. State ex rel. Harris,* 690 N.E.2d 315, 316 (Ind.Ct.App.1997). "A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *Id.* When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses. *Zillmer v. Lakins,* 544 N.E.2d 550, 552 (Ind.Ct.App.1989). "Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. Unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed." *In re Marriage of Glendenning,* 684 N.E.2d 1175, 1179 (Ind.Ct.App.1997), *trans. denied.* Furthermore, this court will only reverse the trial court's contempt judgment if there is no evidence to support it. *Shively v. Shively,* 680 N.E.2d 877, 882 (Ind.Ct. App.1997).

" In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something." *Adler v. Adler*, 713 N.E.2d 348, 354 (Ind.Ct.App. 1999). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Glendenning*, 684 N.E.2d at 1179.

In the present case, the evidence reveals that on September 19, 1996, Appellants, along with other REMC customers, suffered an interruption of their electric utility. Although REMC restored service to its other customers, it failed to restore service to Appellants, but instead rerouted electrical service around the Seldom Seen Lake property to its other customers. Appellants promptly notified REMC of the power outage on September 19, 1996, however, REMC refused to restore service to Appellants until Appellants furnished it with a key to the west gate. Although the trial court found that REMC did not intentionally terminate electrical service to Appellants' premises on September 19, 1996, it did find that REMC did not use reasonable diligence to provide and maintain electric service to Appellants after it was notified of the power outage. REMC refused to restore service to Appellants until the trial court granted Appellants' Complaint for Temporary Restraining Order for REMC's failure to restore service. In relevant part, the trial court's Temporary Restraining Order provided as follows:

> IT IS THEREFORE ORDERED that a temporary restraining order be, and is hereby issued against Jackson County REMC, and Jackson County REMC is hereby restrained and enjoined from interrupting or terminating electric utility service to the plaintiffs for any reason without notice unless a condition dangerous or hazardous to life, physical safety or property exists, or plaintiffs failure to pay for utility services.

(R. 40).

On September 26, 1996, Appellants' electric service was again interrupted. In its Amended Findings of Fact and Conclusions of Law, the trial court found and concluded that:

> 38. On September 26, 1996, Jackson County REMC again interrupted electric service to the Plaintiffs while undertaking repairs of its lines; Jackson County REMC gave no notice and attempted to give no notice to the Plaintiffs of the interruption of electric service even though Plaintiff Angela Voyles was at home, at the residence, at the time service was interrupted, and the work being done by REMC was in the yard.
>
> 39. Jackson County REMC caused the interruption of service on September 26, 1996.
>
> * * * *
>
> 47. That Jackson County REMC did unreasonably fail to provide restoration of electric utility service to the Plaintiff in a timely fashion in violation of its own rules and regulations, after the outage on September 19, 1996, by inserting as a condition to the restoration of service, a key to the gate.
>
> 48. Jackson County REMC, without notice, in violation of the Temporary Restraining Order, disconnected service to Plaintiffs' property on September 26, 1996.
>
> 49. Jackson County REMC is in contempt of court for its violation of the Temporary Restraining Order.

(R. 24, 26).

Although REMC correctly argues that the trial court's Findings of Fact and Conclusions of Law do not state that REMC willfully or intentionally disconnected service, thereby disobeying the Temporary Restraining Order, we find that the evidence supports the inference that REMC's interruption of Appellants' service on September 26, 1996, was willful. Specifically, REMC had interrupted Appellants' service in the past, refusing to restore service for five days until the trial court issued a

Temporary Restraining Order against it. Further, REMC again interrupted service to Appellants on September 26, 1996, without notice. Therefore, we can infer that although the trial court's finding did not include the word "willful" or "intentional" when referring to REMC's interruption of Appellants' service on September 26, 1996, there is sufficient evidence to support the trial court's conclusion that REMC was in contempt of court for violating its Temporary Restraining Order.

### III. *Claim for Damages to Personal Property*

 On cross-appeal, REMC argues that Appellants made no request for relief for damages to personal property in their Motion to Correct Errors, the issue of damages to personal property has never been pleaded, and the Voyles never introduced any evidence of damages to personal property. Specifically, REMC contends that the trial court erred in its Conclusion of Law No. 56, which stated that:

> 56. Plaintiffs' [sic] were damaged through the loss of freezer contents by Jackson County REMC's failure to timely restore service on September 19, 1996. A hearing on plaintiff's [sic] damages is scheduled for the 7 day of May, 1999, at 1:00 o'clock p.m.

(R. 28). Therefore, REMC claims that the trial court erred in its Amended Order granting Appellants' Motion to Correct Errors by scheduling a hearing on the issue of the Voyles' damages to personal property. We disagree.

First, in their Motion to Correct Errors, Appellants did not address the issue of personal property damage because the trial court did not address this issue in its Preliminary Injunction Order that was subsequently amended after the trial court granted Appellants' Motion to Correct Errors. However, in their Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Damages stemming from REMC's refusal to restore service on September 19, 1996, Appellants alleged the damages that they

would suffer if their electrical service was not restored:

> 9. That plaintiffs Dennis Voyles and Angela Voyles reside upon the property and immediate and irreparable injury, loss, and damage will result to plaintiffs unless electrical service is promptly restored to plaintiffs' property; plaintiffs are without electrical service for the basic necessities and convenience of life from day to day living, including lights for the security of the premises and property which is remote and isolated; the power to operate a freezer for the preservation and storage of food; power to operate a telephone answering device necessary in plaintiff's business.

(R. 36).

Next, in the trial court's Temporary Restraining Order of September 24, 1996, the court found that "irreparable injury, loss or damage may result if a temporary restraining order is not granted without notice." (R. 39).

Finally, Dennis Voyles testified that when he returned home following the service interruption on September 19, 1996, he discovered that items in the freezer were beginning to melt and were inedible. Angela Voyles also testified that she had food in the freezer on September 19, 1996, when service was interrupted, and that she and her husband were unable to save the food.

Therefore, we find that the Voyles properly stated a claim for damages to personal property, and that the trial court properly scheduled a hearing on the issue of damages to the Voyles' personal property.

### CONCLUSION

Based on the foregoing, the trial court's findings of fact and conclusions of law with respect to its Permanent Injunction Order were supported by the evidence, there was sufficient evidence to support the trial court's finding that REMC was in contempt of court for violating a Temporary Restraining Order by disconnecting elec-

trical service to Appellants' property, and Voyles adequately stated a claim for damages to personal property.

Affirmed.

KIRSCH, J., and BAKER, J., concur.