Joe ANGELONE, Appellant–Plaintiff,

v.

Leroy CHANG and Elise Chang,
Appellee–Defendants.

No. 02A03–0101–CV–19.

Court of Appeals of Indiana.

Nov. 27, 2001.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, IN, Attorney for Appellant.

Charles E. Davis, Swift & Finlayson, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Joe Angelone appeals the trial court's grant of judgment in favor of Leroy and Elise Chang in Angelone's breach of contract action against the Changs. We affirm.

### Issues

I.   whether the trial court erred in concluding that the condition of the deck constituted a "major defect" pursuant to the terms of the purchase agreement; and

II.   whether the trial court erred in finding that the Changs did not anticipatorily breach the purchase agreement.

### Facts

In 1997, Joe Angelone and real estate broker Jan Sanner entered into a listing agreement to sell Angelone's Fort Wayne home. Leroy and Elise Chang, working with real estate agent Amy Hansen, made an offer to purchase the home on October 8, 1997. Angelone accepted the offer the following day. Pursuant to the purchase agreement, closing of the sale was to take place on or before October 24, 1997.

Further, pursuant to the purchase agreement, the Changs maintained the right to have the real estate inspected for "major defect[s]." The purchase agreement defines a major defect as a "condition that would: (1) have a significant, adverse effect on the value of the real estate; (2) significantly impair the health or safety of future occupants of the real estate; or (3) significantly or adversely affect the expected normal life of the real estate if not repaired, removed, or replaced." Appellant's Appendix, p. 29.

On October 13, 1997, the Changs had the real estate inspected by Clifford Burge. The inspection report noted, among other things, "improper spacing [of the wood deck railing and] loose wood members." According to Burge, the condition of the deck was unsatisfactory. Following the inspection, the Changs completed an Inspection Response Form wherein they agreed to accept the property provided that Angelone corrected seven enumerated items on or before closing. One of the items that

the Changs requested was the "install[ation] to current code [of] additional deck balusters."[1] Appellant's Appendix, p. 62.

On October 16, 1997, Angelone responded to the Changs' Inspection Response Form. He agreed to correct certain items; however, he failed to mention the installation of the balusters. On October 17, 1997, Hansen faxed a note to Sanner advising her that Angelone's response to the Inspection Response Form was inadequate. On October 20, 1997, Angelone responded with specifics regarding the repair of certain items; however, he again failed to mention the balusters.

That same day, the Changs advised Angelone that they were rejecting his response to their inspection response form because he had failed to respond to their request for specific information regarding the correction of major defects. They further explained that correction of those defects would not have been completed by October 24, 1997, as required by the contract. The Changs included a signed mutual release requesting to be released from the contract. After receiving the Changs' notice, Angelone stopped work on most of the repairs.

In June 1998, Angelone filed a breach of contract action against the Changs. At trial, Burge testified that the structural members of the deck were improperly spaced, loose, and unsafe.[2] He further

testified that the deck's structural problems were a "major deficiency . . . for safety reasons." T. 382. Specifically, Burge testified that a "child could fall off, hurt [himself] and incur a lawsuit and then even an adult could fall and then the structure of those loose could get worse and cause some injury." T. 382. Burge also testified that the deck's structural problems could "cause a possible problem with the longevity of the life of the deck." T. 382. In addition, Allen County Building Commissioner James Norris testified that the deck did not meet code requirements and that it had been constructed without approval or a permit from the county building department.

Following the trial, the trial court entered special findings of fact and conclusions of law pursuant to Angelone's request. Specifically, the court found that because the deck was unstable and failed to meet code requirements, it was a "major defect" pursuant to the terms of the purchase agreement. The court further found that the Changs did not anticipatorily breach the contract. Rather, the trial court concluded that Angelone's failure to correct the deck prior to the closing date "permitted the Changs to properly terminate the agreement." Appellant's Appendix, p. 16.

### Analysis

When a party has requested special findings of fact and conclusions of law

---

1. A baluster is a "short support like a column often with a circular section and a molded vaselike outline." Webster's Third New International Dictionary (1976).

2. Pictures of the deck admitted as exhibits at trial reveal that the deck is several feet above ground facing a wooded area. The deck has several open areas that lack structural support, such as balusters. In this regard, Angelone explained as follows:

   One of the high points of this home is the fact that it backs up on a tribute a small

ravine that's a tributary of the St. Mary's River or whatever you call it. It has a wall of windows, both in the breakfast room and the living room that look down into that ravine. If the balusters were installed, your view of that ravine and all the wildlife, the deer, the wildflowers and the birds that are there, would be severely detracted from, okay. It's one of the things I really enjoyed about this house. . . .

T. 328.

pursuant to Indiana Trial Rule 52(A), the reviewing court must first decide whether the evidence supports the findings and second whether the findings support the judgment. *Adkins Investments v. Jackson County REMC,* 731 N.E.2d 1024, 1029 (Ind.Ct.App.2000), *trans. denied.* The findings and judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Carroll v. J.J.B. Hilliard, W.L. Lyons, Inc.,* 738 N.E.2d 1069, 1075 (Ind. Ct.App.2000), *trans. denied.* In making these determinations, we shall neither reweigh the evidence nor judge the credibility of witnesses. *Adkins,* 731 N.E.2d at 1029. Rather, we will consider only the evidence and the inferences flowing therefrom that are most favorable to the judgment. *Id.*

### I. Major Defect

■ Angelone first argues that the trial court erred in finding that the condition of the deck was a major defect pursuant to the terms of the purchase agreement. Specifically, he contends that there is no evidence in the record to support this finding.

The purchase agreement provides that a major defect is a "condition that would: 1) have a significant adverse impact on the value of the Real Estate; or 2) significantly impair the health or safety of future occupants of the Real Estate; or 3) significantly shorten or adversely affect the expected normal life of the Real Estate if not repaired, removed or replaced." Appellant's Appendix, p. 29.

Our review of the record reveals that the deck was constructed without approval or a permit from the county building department, and that it did not meet code requirements. Further, the deck's structural members were improperly spaced, loose, and unsafe. In addition, the structural problems could cause a problem with the deck's longevity. This evidence supports the trial court's finding that the condition of the deck was a major defect pursuant to the terms of the purchase agreement.

### II. Anticipatory Breach

■ Angelone further argues that the trial court erred in finding that the Changs did not anticipatorily breach the purchase agreement. Repudiation of a contract must be positive, absolute, and unconditional in order that it may be treated as an anticipatory breach. *Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.,* 692 N.E.2d 905, 911 (Ind.Ct. App.1998), *trans. denied.* Because the doctrine of anticipatory repudiation represents a harsh remedy, the requirement that the repudiating statement be clear and absolute is a strict one. *Id.* A mere request to be released from a contract cannot act as an anticipatory breach. *Mullis v. Brennan,* 716 N.E.2d 58, 64 (Ind. Ct.App.1999).

Here, our review of the record reveals that the Changs advised Angelone that they were rejecting his response to their inspection response form because he had failed to respond to their request for specific information regarding the correction of major defects. They further explained that correction of those defects could not have been completed by October 24, 1997, as required by the purchase agreement. The Changs also included a signed mutual release requesting to be released from the contract. This mere request to be released from the contract is not an anticipatory breach. The trial court did not err in

finding that the Changs did not anticipatorily breach the contract.

We further note that the unambiguous terms of the purchase agreement reveal that the trial court correctly concluded that Angelone's failure to correct the deck problems prior to the closing date permitted the Changs to properly terminate the agreement. Specifically, the purchase agreement provides in pertinent part as follows:

> Section 18.01 Additional Provisions Regarding Condition of Real Estate
>
> (c). . . . If an inspection report reveals a Major Defect and Buyer wants it cured, Buyer shall give Seller a complete copy of the report within 5 days after receiving it, identifying either on the copy or in a separate document delivered with the copy the Major Defect(s) Buyer wants cured. Within 10 days after such a copy or document is delivered, Seller shall give Buyer a notice identifying which of such Major Defect(s) (all, some or none to be stated in the notice) Seller is willing to cure. If Seller responds that Seller is willing to cure only some or none of the Major Defect(s) Buyer wants cured, Buyer shall have 5 days after the receipt of the response within which to accept or reject the response. . . .
>
> (d) Subject to Section 18.01(f),[3] either party may terminate this Agreement if: (1) Seller states in the response under (c) above that Seller will not cure a Major Defect(s) Buyer wants cured, or (2) Buyer rejects the response under (c) above, or (3) either party fails to act

timely as the party is required under this Section 18.01(c).

Appellant's Appendix, pp. 29–30.

Here, our review of the record reveals that the Changs' inspection report revealed several major defects, including the wooden deck. The Changs properly advised Angelone of the major defects that they wanted corrected. Angelone gave the Changs notice of which major defects he was willing to cure. The notice did not mention the wooden deck. The Changs rejected Angelone's response, thereby terminating the agreement pursuant to Section 18.01 of the contract.

### Conclusion

The trial court did not err in finding that 1) the condition of the deck was a major defect pursuant to the terms of the purchase agreement and 2) the Changs did not anticipatorily breach the purchase agreement.

Affirmed.

MATTINGLY–MAY, J., and SULLIVAN, J., concur.

### *ORDER*

This Court having heretofore handed down its opinion in this appeal on November 27, 2001, marked Memorandum Decision, Not for Publication;

Comes now the Appellees, by counsel, and file herein their Verified Motion to Publish Memorandum Decision, alleging therein that said decision should published because it involves matters of great public importance and that publishing the opinion will assist the trial courts in quickly resolv-

---

**3.** (f) WAIVER: If Buyer fails to timely obtain the inspection and the report described in Section 18.01(a), or fails either to timely give Seller a complete copy of the inspection report or to timely identify each Major Defect Buyer wants cured. Buyer shall be deemed to have WAIVED Buyer's right to have an inspection (together with a report on it), or to have Seller cure any Major Defect disclosed by the inspection. In such event, neither Seller nor Buyer may terminate this agreement under Section 18.01.

Appellant's Appendix, p. 30.

ing an area which has become a constant source of litigation;

The Court having examined said Motion, having reviewed its opinion in this appeal and being duly advised, now finds that said Motion should be granted as prayed.

IT IS THEREFORE ORDERED that the Appellees' Verified Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this case on November 27, 2001, marked Memorandum Decision, Not for Publication, is now ordered published.