**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS G. KROCHTA**
Vanderburgh County Public Defender
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: D.C. | ) ) ) ) | |
| L.B. (father), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No.  82A01-1203-JT-114 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES. | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
Cause No. 82D01-1003-JT-22

**October 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

L.B. ("Father") appeals the involuntary termination of his parental rights to his minor son, D.C. Father raises two issues for our review, which we restate as whether sufficient evidence was presented to support the trial court's findings and whether, based on those findings, DCS met the statutory requirements for terminating Father's parental rights. Concluding the evidence sufficiently supports the trial court's findings and the findings establish the statutory requirements for terminating Father's parental rights, we affirm.

## Facts and Procedural History

D.C. was born in June 2007. At the time, Father was estranged from D.C.'s mother and was not made aware of D.C. In September 2008, the Department of Child Services ("DCS") filed a petition alleging D.C. was a child in need of services ("CHINS"). The court determined D.C. to be a CHINS and in April 2009, D.C. was removed from his mother's care. Father was incarcerated for the majority of the CHINS proceedings for a Class C felony conviction. DCS Family Case Manager Christy Skie made Father aware of D.C.'s existence in May 2010 and he was initially adamant that D.C. was not his son. On July 1, 2010, DCS filed a petition for termination of parental rights against Father and D.C.'s mother, and in December 2010, D.C. was placed with his current pre-adoptive foster family.

Father was released from prison in September 2010, and found out in December 2010, that a DNA test had proved his paternity of D.C. Father did not contact Skie about his son until January 2011, responding to a court summons. On February 1, 2011, Father appeared in court, again denied that he was D.C.'s father, and discussed voluntarily terminating any

rights he had to the child.  Instead, the trial court ordered Father to comply with a parental participation plan that required working with a parent aide, random drug screens, visitation with his son, a Fathers Matter program, a nurturing/parenting class, a parenting/bonding assessment, and maintaining contact with Skie.  On April 13, 2011, Mother's rights to D.C. were terminated.[1]

The Fathers Matter program was later dropped from the plan, as was the drug screening after Father tested negative on some screens and failed to show up for the others. Father did not cooperate with the parent aide, missing several appointments, and failed to appear for a scheduled bonding assessment.  He did not provide contact or employment information to Skie, who tried for nearly two months to visit him at his house to verify its condition, leaving him messages that she had come by and needed to set up a meeting.  When Skie finally found Father at home, he was angry that she had "come unannounced" and refused to show her large portions of his home, allowing her only to briefly see the downstairs of the house and what "may be" D.C.'s intended room.  Transcript at 323.  The house did not have a refrigerator, a stove, a bed for D.C., or electricity, although Father's bedroom and living room were fully furnished including a big screen television.

Father works part or full time on a temporary basis through an employment agency. His house is leased pursuant to an option to buy contract, however he usually only makes partial payments, has been assessed additional late fees several times, and at the time of trial had a balance due of $257.15.  His electricity remains turned off because of an outstanding bill due the electric company for $814.43, dating back to June 2011.  The electricity was

---

[1] Mother is not a party to this appeal.

restored for one brief week under the name of a Jennifer Morris, and then turned off again. In April 2011, Father requested a meeting between his court-appointed attorney, Skie, D.C.'s foster parents, the Court Appointed Special Advocate ("CASA"), and himself to discuss custody of D.C. Father was the only one who did not come to the meeting.

In October, November, and December of 2011, the court held an evidentiary hearing and on February 15, 2012, terminated Father's parental rights. Father now appeals.

## Discussion and Decision

### I. Standard of Review

> This Court has long had a highly deferential standard of review in cases concerning the termination of parental rights. Thus, when reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. We will consider only the evidence and reasonable inferences therefrom that are most favorable to the judgment. When reviewing findings of fact and conclusions thereon in a case involving termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings. Then, we determine whether the findings support the judgment.

In re I.A., 903 N.E.2d 146, 152-53 (Ind. Ct. App. 2009) (citations and internal quotes omitted). "The findings and judgment will be reversed only when clearly erroneous." Adkins Invs., Inc. v. Jackson Cnty. REMC, 731 N.E.2d 1024, 1029 (Ind. Ct. App. 2000), trans. denied. "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." Id. "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." In re I.A., 903 N.E.2d at 153.

4

## II. Findings of Fact

Father does not challenge most of the trial court's twenty-nine findings, arguing only that findings 13, 14, 20, 21, and 22 are not supported by evidence.

### A. Findings No. 13, 14, and 20

Father argues that the record does not contain clear and convincing evidence supporting findings 13, 14, and 20, which read as follows:

> 13. [Father] violated the terms of his Lease with Option to Purchase at a Fixed Price for the home at [ ] N. Harding Avenue. [Father] was required to pay $583.46 per month for his rent beginning August 1, 2011. [Father] had paid a partial payment in August, a partial payment in October with balance carried forward, and a partial payment in November. He was penalized with three late fees. On the final day of trial on December 1, 2011, he was behind $257.15 with a late fee of $29.18. [Father's] inability to pay his full rent shows his instability. The nature of his temporary job also shows his instability.
>
> 14. [Father] was required by the terms of his Lease with Option to Purchase at a Fixed Price to maintain electricity in the home. The land lord [sic] was present in trial and surprised that the home had been without electricity since occupancy. There was a period of one week from November 9th through November 16th, which had the electricity in the name of Jennifer Morris. [Father] could not get his utilities turned, [sic] because he had a past due amount of $814.43 owed to Vectren, the utility company, since his failure to pay in June 2011. Again, [Father] has instability due to financial problems. Ms. Morris in his life for just a week also shows his lack of stability.
> ***
> 20. At the end of the trial when his attorney asked what he wanted the Court to do, [Father] stated that he did not have the ability to financially or physically care for [D.C.], but that he wanted to visit. This fact best summarizes this case. [Father] doesn't have the means, stability, and the desire to be a full-time father and he cannot be trusted to raise this child as needed. [Father] will probably never remedy these issues as he doesn't see anything wrong with his lifestyle, and while this might be fine for an adult, it isn't for a child.

Appellant's Appendix at 25-27. Father does not dispute the references these findings make to the record, but rather argues it is clearly erroneous for the trial court to conclude his

5

financial situation is indicative of instability. Father concedes he works only temporary jobs, is unable to pay his full rent, and has outstanding debts to his landlord and to Vectren. Father stated he is "struggling to be a better parent," and that he is "not able to actually physically, financially take care of [D.C.]." Tr. at 330. The record also indicates that Father does not want to be a full-time father, as he stated his objective is to "be in [D.C.'s] life sometime. [sic]" Id. at 331. Given the unpredictability of his employment, his financial debt, and his inability thus far to improve the situation, we find sufficient evidence to support the trial court's findings regarding Father's instability.

### B. Findings No. 21 and 22

Father also challenges findings 21 and 22, which read as follows:

> 21. The Head Start teacher testified that [D.C.] becomes apprehensive when the bell rings for cot (resting) time. This is the time that the Ireland Home Based Services worker picks him up for his visitation with [Father]. While [D.C.] is happy when he arrives in the morning to school and happy when he leaves to go to the foster home, he is unhappy and does not want to leave school to visit with [Father].
> 22. The foster parents have observed that following after visits with [Father], [D.C.] is defiant, wets his pants, has regressive behavior such as thumb sucking, and has been violent. [D.C.] has stated that he does not want to visit [Father].

Appellant's App. at 27. Father argues that these findings are of low probative value and contends that testimony of the foster parents is suspect. "[W]hen reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses." In re I.A., 903 N.E.2d at 152-53. The testimonies of the Head Start teacher and the foster parents directly support findings 21 and 22, and thus the trial court's findings are not clearly erroneous.

6

## III. Statutory Requirements for Termination of Parental Rights

The traditional right of a parent to establish a home and raise his child is protected by the Fourteenth Amendment of the United States Constitution. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). This right is, however, subordinate to the interests of the child and "may be terminated when the parents are unable or unwilling to meet their parental responsibilities." In re A.I., 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), trans. denied. In order to terminate parental rights, DCS must allege and prove in relevant part:

> (A) that one (1) of the following is true:
>   (i) The child has been removed from the parent for at least six (6) months under a dispositional decree. . . .;
> (B) that one (1) of the following is true:
>   (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied;
>   (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. . . .;
> (C) that termination is in the best interests of the child; and
> (D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove these elements by clear and convincing evidence. McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 198 (Ind. Ct. App. 2003). Having already determined the trial court's findings are supported by the evidence, "we determine whether the findings support the judgment. The trial court's judgment will be set aside only if it is clearly erroneous." In re I.A., 903 N.E.2d at 153 (citation omitted).

Of the requirements of Indiana Code section 31-35-2-4(b)(2), Father only disputes whether there is reasonable probability that either the conditions that resulted in D.C.'s removal will not be remedied or the continuation of Father's parent-child relationship poses a threat to D.C.'s well-being.

In deciding whether the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will be remedied, the court considers evidence of changed conditions, the parent's habitual patterns, the parent's criminal history, the parent's lack of adequate housing or employment, as well as the parent's interactions with DCS in relation to the child, among other things. See In re Kay L., 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). "DCS need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." Id.

Regarding his criminal history, Father has been convicted five times for the same crime: operating a motor vehicle after forfeit of license for life, a Class C felony. Regarding adequate housing, the living room and bedroom of Father's home are fully furnished, including a big screen television, but his house still lacks basic necessities: electricity, a stove, and a refrigerator. Regarding adequate employment, Father works through a temp agency and does not know whether he will work three or seven days in any given week. Regarding his interactions with DCS, Father has been consistently uncooperative with Family Case Managers. Nothing in the findings indicates the conditions that led to D.C. being placed outside of Father's care have changed during this proceeding. Most importantly,

Father does not claim that his conditions will change, or that he will at any point be able to support D.C., merely arguing he should retain parental rights so that he can "be in [D.C.'s] life sometime.[sic]" Tr. at 331. The trial court's findings support its judgment that there is a reasonable probability that Father's behavior will not change.

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and thus only one of its requirements must be proven. Accordingly, finding adequate support for the judgment that there is a reasonable probability that the reasons for D.C.'s placement outside Father's home will not be remedied, we need not address whether there is a reasonable probability that the continuation of the parent-child relationship poses a threat to D.C.'s well-being.

## Conclusion

The record supports the trial court's findings and its conclusion that there is a reasonable probability the conditions leading to D.C.'s placement outside Father's care will not change. We therefore affirm the trial court's termination of Father's parental rights.

Affirmed.

BAKER, J., and BRADFORD, J., concur.