Gayle FISCHER, Appellant–Plaintiff,

v.

Michael and Noel HEYMANN, Appellees–Respondents.

Michael B. Heymann and Noel N. Heymann, Third–Party Plaintiffs

v.

Caryn J. Craig, Michael Fox, and F.C. Tucker Company, Inc., Appellees/Third–Party Defendants.

No. 49A04–1004–PL–231.

Court of Appeals of Indiana.

Feb. 24, 2011.

Gary M. Selig, Indianapolis, IN, Attorney for Appellant.

J. David Hollingsworth, Brent R. Borg, Church, Church, Hittle & Antrim, Noblesville, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

Michael and Noel Heymann (collectively the "Heymanns") backed out of an agreement to purchase a condominium from Gayle Fischer, and Fischer sued. Following a bench trial, Fischer appeals the trial court's judgment in favor of the Heymanns, ordering that Fischer reimburse their earnest money deposit and pay their litigation costs and attorney's fees. On appeal Fischer raises two issues, which we restate as: 1) whether the trial court clearly erred in concluding the property's electrical concerns constitute "major de-

fects" as defined in the purchase agreement, and 2) whether the trial court clearly erred in concluding Fischer failed to timely respond to the Heymanns' repair request. Concluding the trial court clearly erred in concluding major defects existed, we need not review the trial court's decision as to Fischer's response to the Heymanns' request, and accordingly, we reverse and remand.

### Facts and Procedural History

On February 4, 2006, the Heymanns entered into a purchase agreement to purchase a condominium from Fischer for $315,000, with a closing date of May 31, 2006. Pursuant to the agreement, the Heymanns paid $5,000 in earnest money, and on February 6, the Heymanns timely exercised their right to have the condominium independently inspected for defects.

The purchase agreement provided the Heymanns could terminate the agreement under the following conditions:

> If the Buyer reasonably believes that the Inspection Report reveals a MAJOR DEFECT with the Property and the Seller is unable or unwilling to remedy the defect to the Buyer's reasonable satisfaction before closing (or at a time otherwise agreed to by the parties), then this Agreement may be terminated by the Buyer or such defect shall be waived by the Buyer and the transaction shall proceed toward closing. Under Indiana Law, "Defect" means a condition that would have a significant adverse effect on the value of the Property that would significantly impair the health or safety of future occupants of the Property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises. BUYER AGREES THAT ANY PROPERTY DEFECT PREVIOUSLY DISCLOSED BY SELLER, OR ROUTINE MAINTENANCE AND MINOR REPAIR ITEMS MENTIONED IN ANY REPORT SHALL NOT BE A BASIS FOR TERMINATION OF THIS AGREEMENT. ALL TIME PERIODS APPLICABLE TO INSPECTION RESPONSES SHALL BE REASONABLE.

Appellant's Appendix at 273.

The Heymanns hired an inspection company, which inspected the property and prepared an inspection report that categorizes and color-codes substantive findings as "CONCERNS," "REPAIRS," "MAINTENANCE," "ITEMS TO MONITOR," "GENERAL COMMENTS," and "ACCEPTABLE," and explains this terminology for clearer understanding of substantive findings. *Id.* at 499. "CONCERNS," the most severe category, is described as follows:

> We use this category to identify systems or components that, in our opinion, you should be concerned about for one or more of the following reasons;
> 1) The system or component is not performing its intended function.
> 2) The system or component is a safety hazard to the occupants of the property.
> 3) The system or component is negatively affecting the property's habitability.
> 4) The system or component has a high probability of incurring substantial expense to repair or replace now or in the near future.
>
> Items listed as CONCERNS should be evaluated by professionals in the appropriate trades before closing. It is our intention that items listed as CONCERNS be thoughtfully considered before closing.

*Id.*

The inspection report of the condominium deemed all items "acceptable" except

as noted, and categorized findings as "Major Concerns," "Repairs," "Maintenance," "Monitor," and "General Comments." *E.g., id.* at 512. Although the report included numerous findings in all of the categories, the "Major Concerns" relevant to this appeal state: "There is no electrical power to the outlets in the half bathroom and second floor bathroom and exterior outlet on the balcony." *Id.; see also id.* at 511 ("No power was observed to the outlet on the balcony."). These "Major Concerns," as denoted on the pages of the report, were again included as "CONCERNS" in the report's two-page summary of findings. *Id.* at 513.

On February 10, the Heymanns submitted to Fischer a "Buyer's Inspection Response," in which they agreed to accept the property if Fischer resolved the following: "Electrical power to the outlets in the half bathroom and second floor bedroom and exterior balcony. Light over half bath sink does not work properly (probably bulb replacement)." *Id.* at 279. The Heymanns reserved the right to inspect the property again prior to closing, but demanded Fischer respond by February 13. Fischer responded on February 13 via an "Amendment to Purchase Agreement," by checking a box that reads "The time for making any responses to inspections is extended to" and filling in "February 28, 2006." *Id.* at 280. On February 15, the Heymanns agreed to extend Fischer's time for response to February 18. *Id.* at 281. Fischer's agent telephoned the Heymanns' agent before February 18, and stated Fischer was going to fix the problem but needed an extension because of the unavailability of the electrician until February 20. Fischer's agent testified she told the Heymanns' agent "I can't speak for [Fischer] because I'm not her. I'm not my seller. But this was my feeling. You know, I just wanted to let [the Heymanns' agent]

know that it's not a big issue." Transcript at 63.

On February 17, the Heymanns put in an offer on a different condominium unit and executed a document for release from Fischer's unit, but instructed their agent not to deliver the release to Fischer until February 19.

On February 19, the Heymanns' agent delivered their signed release to Fischer, which she refused to agree to or sign. Also on February 19, the Heymanns entered into a purchase agreement as to the second unit. On February 20, Fischer's electrician resolved the electrical problem by pushing the GFI reset button on the faces of the outlets, and Fischer replaced a light bulb. Following the Heymanns' failure to pay an additional down payment, Fischer brought suit for specific performance of the purchase agreement or, in the alternative, damages for reimbursement of maintenance expenses and the difference between the agreed upon price and the present fair market value, and attorney's fees and costs. The Heymanns answered, raised affirmative defenses, counterclaimed for damages, and brought a third-party indemnity claim against their agent.

Fischer moved for findings of fact and conclusions of law, and following a bench trial, the trial court entered findings of fact and the following conclusions of law:

## CONCLUSIONS OF LAW

\* \* \*

10. Defect as defined in the agreement ..., means a condition that would have significant adverse effect on the value of the Property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the normal life of the premises.

11. In the inspector's report concerns is defined as a system or component having a high probability of incurring

substantial expense to repair or replace now or in the near future; or the system or component is a safety hazard to the persons of [sic] the property; or the system or component negatively affects the property's habitability.

12. The inspector expressed major concerns that there was no electrical power to the outlets in several rooms in the home.

13. The court finds the definition of concern as used by the inspector and defect as in agreement are substantially the same.

14. The electrical problems listed in the Inspection Response constitute "Major Defects" pursuant to the agreement, line 138, and it was reasonable for the Heymanns to conclude that the Inspection Report designated said electrical problems as "Major Defects."

15. Fischer failed to agree to remedy the "Major Defects" as set out in the Inspection Response on or before February 18, 2006.

16. On or about February 19, 2006 the agreement between the Heymanns and Fischer became void.

* * *

19. The Heymanns' deadline of February 18, 2006 was not met and there was no agreement.

20. Because there was no contract formed, pursuant to the agreement, . . . the Heymanns' earnest deposit of Five Thousand Dollars ($5,000.00) must be returned to them.

23. [sic] Pursuant to the agreement, . . . the prevailing party in any legal or equitable proceeding shall be entitled to recover attorney's fees and court costs.

. . .

23. [sic] The Court makes no order on the Third Party Complaint since same is moot based on finding for the Heymanns and against Fischer.

. . .

Appellant's App. at 19–20. Fischer now appeals.

*Discussion and Decision*

I. Purchase Agreement

A. Standard of Review

Upon appeal of a trial court's special findings of fact and conclusions of law entered pursuant to Indiana Trial Rule 52(A), we follow a two-part standard of review. *Angelone v. Chang*, 761 N.E.2d 426, 428–29 (Ind.Ct.App.2001). We determine first whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* at 429. We will reverse only if the findings or judgment are clearly erroneous. *Id.* "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Id.* We do not reweigh the evidence or assess the credibility of witnesses, and "consider only the evidence and the inferences flowing therefrom that are most favorable to the judgment." *Id.*

B. Contract Interpretation

 Interpretation and construction of contracts are questions of law. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind.Ct.App.2007). In reviewing questions of contract interpretation and construction upon appeal, we read the contract "as a whole when trying to ascertain the parties' intent, and we will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Id.* Further, we "must accept an interpretation of the contract that

harmonizes its provisions, as opposed to one that causes the provisions to conflict." *Id.*

The crux of the dispute over whether the electrical problems constitute major defects as defined by the purchase agreement stems from each party's focus on a different portion of the relevant clause. In particular, the Heymanns contend they were free to terminate the agreement because they *reasonably believed* the electrical problems were major defects, while Fischer contends the electrical problems required (at most) *minor repairs* and thereby could not have been a basis for termination.

■ In accordance with the rules of contract interpretation, we interpret the purchase agreement to mean the Heymanns had the right to terminate the purchase agreement if they "reasonably believe[d]" the defects were "MAJOR DEFECT[S]," so long as the reasonableness of their belief is evaluated objectively, as opposed to subjectively. Appellant's App. at 273. This interpretation harmonizes the portions of the clause upon which each party bases its argument—a reasonable belief of a major defect and that minor repairs are excluded—which otherwise appear to conflict.

If the reasonableness of the Heymanns' belief were evaluated subjectively, they could terminate the agreement for a minor repair item that they subjectively believed was a major defect. This would render meaningless the clause barring termination for merely minor repairs: "BUYER AGREES THAT ANY ... MINOR REPAIR ITEMS ... SHALL NOT BE A BASIS FOR TERMINATION OF THIS AGREEMENT." *Id.* Using an objective standard to evaluate their reasonable belief, however, the Heymanns could not terminate the agreement for a minor repair, and yet they could have terminated the

agreement based upon an objectively reasonable belief that a major defect existed.

## C. Major Defects

Consequently, we next address whether the Heymanns held an objectively reasonable belief that the property contained major defects, as defined in the purchase agreement. This determination involves comparison of the purchase agreement definition of "[d]efect," *id.*, the actual findings in the inspection report, and the inspection report's definition of "CONCERNS," *id.* at 499.

■ To be clear, the Heymanns must have held an objectively reasonable belief there was a major defect, defined in the purchase agreement as, "a condition that would have a significant adverse effect on the value of the Property that would significantly impair the health or safety of future occupants of the Property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises." *Id.* at 273.

The substantive findings in the inspection report do not support an objectively reasonable belief that the defect was major. The report indicates there was no electrical power to three outlets, which could be and in fact was easily repaired. Therefore, under an objective standard, this would not have a significant adverse effect on the property's value or significantly impair the health or safety of occupants.

Next, we evaluate whether the finding is a major defect in the context of the inspection report's description of "CONCERNS." *Id.* at 499. This description could bring the Heymanns closer to the requisite "significant adverse effect on the value ... [or] significantly impair the health or safety of future occupants," *id.* at 273, because a concern *may* involve a "safety hazard,"

"negatively affect[ ] the property's habitability," or have a "high probability of incurring substantial expense to repair." *Id.* at 499.

However, the report's disjunctive description, explaining that the Heymanns should be concerned for "one or more of the following reasons," does not necessarily implicate any of the phrases above or necessarily indicate a major defect. *Id.* Because the definition is phrased in the disjunctive, we draw two conclusions. First, the seriousness of the inspection findings could have been as minor as "[t]he system or component is not performing its intended function." *Id.* This does not constitute a major defect and would not produce an objectively reasonable belief of a major defect. Second, the Heymanns and others who read the report must look to the specific finding to gauge the severity of the concern. As mentioned above, the finding that three electrical outlets are not working would not lead to an objectively reasonable belief that a major defect existed.[1]

The purpose of a buyer's independent inspection prior to closing is to unearth defects that may enable termination of the purchase agreement (or a compromise as to repairs or cost deductions between the buyer and seller). Accordingly, the buyer must be held responsible for selecting an inspector whose technical capability and approach to identifying and conveying problems in an inspection report is agreeable to this purpose. Any failure on behalf of the buyer's inspector must be faulted to the buyer. Consequently, between the Heymanns and Fischer, the Heymanns are responsible for any vagueness or incompleteness of the inspector's report because they hired the inspector. Any incompetency of the Heymanns' inspector—demonstrated by his failing to resolve the problem by pushing the GFI reset buttons and triggering the Heymanns' concern as to the seriousness of the electrical problems—must be faulted to the Heymanns. It was the Heymanns' responsibility to clarify with the inspector the extent of the electrical problem prior to their basing their decision to terminate the agreement on his findings.

Therefore we conclude the evidence does not support the trial court's finding that the Heymanns reasonably believed there

---

1. While the dissent states there was "no valid reason advanced why it was not objectively reasonable for the Heymanns to rely on the inspector and his report," Op. at 903, it is the Heymanns who had and failed to meet the burden of showing their objectively reasonable belief the "Major Concerns," Appellant's App. at 512, were the same as a "MAJOR DEFECT." *Id.* at 273. Fischer put forth evidence of the requisite standard to terminate the contract, a "MAJOR DEFECT," *id.* at 273, and the Heymanns put forth a report describing "Major Concerns," *id.* at 512. It was the Heymanns' burden to show these were one and the same. They did not meet this burden as to interpretation of the report or contract. Further, the facts do not suggest a major defect where the problems were resolved by pushing a button on the face of each electrical outlet and replacing a light bulb. In other words, the Heymanns failed to meet the burden of explaining how the purportedly "Major Concerns," *id.* at 512, of three malfunctioning electrical outlets led them to an objectively reasonable belief in the existence of a "MAJOR DEFECT": "a condition that would have a significant adverse effect on the value of the Property that would significantly impair the health or safety of future occupants of the Property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the normal life of the premises." *Id.* at 273. Our appellate standard of review requires reversal when we hold a firm conviction a mistake has been made as to a finding of fact, *Angelone*, 761 N.E.2d at 429, and here we hold a firm conviction that neither the evidence nor reasonable inferences support the trial court finding that the Heymanns held an objectively reasonable belief of a major defect.

was a major defect. As such, their reference to this defect did not give them grounds to terminate the contract and the trial court's findings do not support its conclusion that the purchase agreement became void.

## II. Response to Repair Request

Given our conclusion above, it is unnecessary to address the trial court's findings and judgment regarding Fischer's response to the Heymanns' repair request.

## III. Remand

Upon remand, the trial court shall conclude the Heymanns' attempted termination of the purchase agreement with Fischer was ineffective and determine the extent of damages the Heymanns owe Fischer.

■■ In addition, the purchase agreement provided for the prevailing party to recover attorney's fees and court costs. The purpose of an attorney's fees and costs provision is to make the prevailing party whole, and it will be upheld so long as it does not violate public policy. *Walton v. Claybridge Homeowners Ass'n, Inc.,* 825 N.E.2d 818, 825 (Ind.Ct.App.2005). Therefore, the trial court shall also determine reasonable attorney's fees to be awarded to Fischer, including appellate attorney's fees.

Finally, the trial court shall proceed with its determination of the Heymanns' third-party indemnity claim against their agent.

## Conclusion

The Heymanns did not hold an objectively reasonable belief the property contained a major defect, and thereby did not have authority to terminate the purchase agreement with Fischer. As a result, the Heymanns breached the contract and we reverse without need to address whether Fischer timely responded to their repair request. Upon remand, the trial court shall determine Fischer's damages, attorney's fees, and costs, and proceed with the Heymanns' third-party indemnity claim against their agent.

Reversed and remanded.

RILEY, J., concurs.

BROWN, J., dissents with opinion.

BROWN, J., dissenting.

I respectfully dissent from the majority's conclusion that the Heymanns did not have an objectively reasonable belief that the property contained a major defect. The Heymanns received a detailed inspection report, fifteen pages of which are included in the record, upon which they reasonably relied, and which listed the electrical issues as "Major Concerns" in the Electrical section of the report and as "Concerns" in the Summary section. *See* Appellant's Appendix at 512–513. There is no evidence that the inspector chosen by the Heymanns was not qualified, that his inspections were substandard, or that the report was lacking in quality. And the report clearly delineated "Concerns" and "Major Concerns" from "Repairs." *See id.* In short, there is no valid reason advanced why it was not objectively reasonable for the Heymanns to rely on the inspector and his report.

Additionally, it is undisputed that the Heymanns gave Fischer until and including February 18, 2006 to agree to remedy the problems. Fischer failed to do so. Fischer's agent told the Heymanns' agent "I can't speak for [Fischer]" and no written agreement to remedy was signed. Transcript at 63. That the Heymanns executed another purchase agreement on the 17th of February is of no consequence here: had Fischer agreed to remedy the problems by the 18th, the Heymanns may have been bound under two purchase

agreements, a problem of their creation and one with which they would have been left to deal. But Fischer didn't respond, and although not noted by the trial court, the Purchase Agreement clearly states in separate numbered paragraph 18:

TIME: Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the Purchase Agreement are calendar days and shall expire at midnight of the date stated unless the parties agree in writing to a different date and/or time.

Appellant's Appendix at 528.

Therefore, by its terms, the Purchase Agreement expired at midnight on February 18, 2006.

Accordingly, I would affirm the trial court.