**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BILL GREEN**
Crawfordsville, Indiana

ATTORNEY FOR APPELLEES:

**JAMES E. AYERS**
Wernle Ristine & Ayers
Crawfordsville, Indiana



FILED
Mar 27 2012, 9:22 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CYNTHIA J. BIDDLE, As Personal Representative ) of the Estate of EDGAR E. BIDDLE, Deceased, ) ) | | |
| Appellant-Cross/Appellee-Plaintiff, ) ) | | |
| vs. ) ) | No. 54A01-1105-MI-196 | |
| JOSEPH W. LASKOWSKI and ) BARBARA J. LASKOWSKI, ) ) | | |
| Appellees-Cross/Appellants-Defendants. ) | | |

APPEAL FROM THE MONTGOMERY CIRCUIT COURT
The Honorable Thomas K. Milligan, Judge
Cause No. 54C01-0711-MI-488

**March 27, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff/Cross-Appellee, Cynthia J. Biddle, as Personal Representative of the Estate of Edgar E. Biddle (the Estate),[1] appeals the trial court's Order on the parties' respective motions to correct error which increased the judgment for the Estate, decreased the attorney fees to be paid by Appellees-Defendants/Cross-Appellants, Joseph Laskowski and Barbara J. Laskowski (collectively, the Laskowskis), and imposed specific performance.

We affirm in part, reverse in part, and remand for further proceedings.

## ISSUES

The Estate presents one issue on appeal, which we restate as: Whether the trial court abused its discretion when it decreased the amount of attorney fees to be paid by the Laskowskis.

On Cross-Appeal the Laskowskis present two issues, which we restate as:

(1) Whether the trial court abused its discretion when it interpreted the agreement between the parties; and

(2) Whether the trial court abused its discretion when it ordered specific performance.

## FACTS AND PROCEDURAL HISTORY

In October and November of 2005, the Laskowskis entered into negotiations with Edgar E. Biddle (Biddle), a contractor, for the construction of a lakeside cottage. The

---

[1] Although this cause was originally filed by Edgar E. Biddle, we granted Appellant's motion to substitute Edgar E. Biddle with Cynthia J. Biddle, as Personal Representative of Biddle's Estate on February 15, 2012.

2

Laskowskis had initial plans drawn up but with Biddle's participation and input, three different sets of plans were developed during the negotiation stage. Ultimately, on February 20, 2006, the parties entered into an agreement, which stated

[BIDDLE]
CONTRACTOR

I [Biddle] do agree to build a house of [the Laskowskis].
Located on Lot #2 at Lake Holiday. The home will be built according to the blue print, excluding finishing the basement.

STANDARD FRAMEING [sic] MATERIALS

7/16 osb on the roof.
Anderson Windows
Exterior finish is to be double four dutchlap sideing [sic]. Soffitt is to vinyl. Roof is to be designer shingles or metal homeowners choice. Colors to be chosen by homeowner.

BASEMENT

The basement will be poured walls. It will be done by Price Excavating. His part includes basement walls and floor. He will also do the excavating, cutting in the drive and putting stone on the drive, and putting the septic system in.

INSIDE FINISH

Insulate all ceiling and walls.
½ inch drywall in the walls and 5/8 inch drywall on the ceilings, excluding the cathedral ceilings. (They are to be wood finished). Trim will be stained wood. All interior doors will be stained wood. All walls will be primered and then painted antique white.
Floor coverings will be chosen by the homeowner. Kitchen cabinets and lavey cabinets will be a light oak with laminated tops, color to be chosen by the homeowner. Rear deck to be built out of treated lumber.
The plumbing to be done by Ryker's Plumbing.

ELECTRICAL

The electrical is to be completed by Demoret Electrical. Lighting package to be seleted by the homeowner within the allotted amount of money.

FURNACE

The furnace and central air will be installed by Morrison Heating and Air. This includes a 90+ furnace with a central air conditioner. Main trunk line will be metal, register hook ups with flex.

ALLOTTED COST BREAKDOWN

> This is a guide line [sic] on cost for the homeowner and the contractor, anything above the guidelines will have to be agreed upon by the homeowner and contractor.
>
> Job total
> $126,200.00
> At a hundred dollars a square foot, the breakdown is this:
> Living area $97,800.00 $81.23 per sq. foot
> Basement $18,400.00 $23.47 per sq. foot
> Garage $10,000.00 $18.94 per sq. foot
> This one hundred dollars per square foot is based on the breakdown. This price can be lower upon the material chosen by the homeowner.

(Defendant's Exh. C). Attached to the contract is an estimated cost breakdown, dated January 25, 2006, which indicates that "[t]he house will be built according to the blue print provided by the homeowner, excluding finishing the basement," and which provides detailed pricing for certain described items. (Defendant's Exh. C). Also, included with the contract and estimated cost breakdown is Biddle's payment schedule, calling for three progress payments upon the completion of specific stages in the project. The parties do not appear to dispute that there was an understanding that any costs above the prices included in the contract would have to be mutually agreed upon by the Laskowskis and Biddle.

During the construction of the cottage, details were changed and items were added. On September 1, 2006, Biddle sent a final bill to the Laskowskis, claiming that he was owed $36,617.58 in added costs, whereas the Laskowskis' records indicate that they only agreed on $8,000 in overruns on the construction. Despite negotiations between the parties, they failed to agree and ultimately, the Laskowskis paid Biddle $11,655.00.

4

On December 8, 2006, Biddle filed a notice of mechanic's lien. On November 28, 2007, he filed his Complaint to foreclose his mechanic's lien and for breach of contract. On January 30, 2008, the Laskowskis filed their answer, as well as a counterclaim against Biddle. A trial was commenced on June 10, 2009 and, spanning five non-sequential days, was concluded on June 2, 2010. On November 12, 2010, the trial court entered its findings of fact and conclusions of law, deciding, in pertinent part, that

> 1. The parties had an oral contract for the construction of the [Laskowskis'] lakeside home. The written portion of that contract provided a base price for construction of the home which included allowances for various components of the home. The contract also provided that any additions to the contract or overruns were not to occur unless by agreement of the parties. The [c]ourt finds that the oral agreement is an enforceable contract.

> 2. To the extent that work was done or materials were provided by [Biddle] and the [Laskowskis] failed to object to or to insist that the materials not be provided or that the work not be done, the [Laskowskis] benefited from the materials provided and work done, they are therefore under an obligation to pay [Biddle] for the work done and the materials furnished under the concept that the [Laskowskis] would be unjustly enriched if they failed to pay for what was provided.

> 3. The [c]ourt finds that insofar as the workmanship complaints that the [c]ourt has recognized and found should be fixed by [Biddle], [Biddle] should have the opportunity uninhibited by the [Laskowskis] to correct those errors that were made or to finish the items to be finished or to make the repairs or replacements that need to be made according to the [c]ourt's findings.

> 4. The [c]ourt finds that [Biddle] has a valid enforceable mechanic's lien against the property of the Laskowskis. The [c]ourt finds that there is a basis in law and fact for the lien to be foreclosed and the property sold and the proceeds applied to pay the judgment.

> 5. The [c]ourt further finds that [Biddle] is entitled to recover of and from the defendant damages in the amount of $21,134.00. The [c]ourt further

5

finds that [Biddle] is entitled to recover of and from the [Laskowskis] attorney fees in the amount of $43,032.50.

(Appellant's App. p. 32). Biddle failed to correct the work as ordered by the trial court.

Thereafter, both parties filed motions to correct error. On April 4, 2011, after hearing argument on the respective motions, the trial court entered an order granting Biddle's motion in part and granting the Laskowskis' motion in part. Specifically, the trial court increased Biddle's judgment to $24,284 by eliminating certain credits previously awarded to the Laskowskis. Additionally, with respect to the Laskowskis' motion to correct error, the trial court noted and concluded as follows, in pertinent part:

> It is uncontested that since the trial of this cause [the Laskowskis] have discovered that the adjustable posts which [Biddle] testified he believed were built into the basement walls were, in fact, not built into the basement walls. The [c]ourt relied on that evidence, in part, in making its decision and fashioning its remedy in this case. [The Laskowskis] on the basis of estimates of repair obtained since learning of the absence of the adjustable posts, move the [c]ourt to set aside the evidence, including the recently obtained estimates of repairs and to issue a money judgment in favor of the [Laskowskis] against [Biddle].
>
> * * *
>
> The [c]ourt has no credible probative evidence before it, neither that submitted at trial nor that tendered in support of the [m]otion to [c]orrect [e]rror[], from which to develop a cost to repair, complete or renovate the problems and inadequacies that the [c]ourt found in [Biddle's] workmanship in the construction of the house. . . . For that reason, and because the [c]ourt found [Biddle] was in the best position to correct the errors, make the repairs and complete the project, and because he was willing to do what needed to be done, the court ordered that he complete the project by making the repair, renovation and corrections necessary.
>
> [The Laskowskis] have objected to the [c]ourt's order of specific performance. The [c]ourt did not want to send [the Laskowskis] away without a remedy. A money judgment is not an alternative. There is no adequate remedy at law. Specific performance is available as a remedy.

6

The work [Biddle] is to do, or have done under his supervision, is primarily in the nature of finishing the project, and correcting some of the errors in construction.  There is no showing that he cannot do what needs to be done.  Clearly the [Laskowskis] do not want him to do the work, but the [c]ourt finds that he should be allowed to do the work and that he should do it in a good and workmanlike manner.  []

* * *

For the foregoing reasons the [c]ourt finds that while the absence of the adjustable posts from the basement walls is newly discovered evidence, that in and of itself does not alter the [c]ourt's determination that the proper remedy for the [Laskowskis] is for [Biddle] to complete the work found by the [c]ourt necessary to be done, including bringing the first floor to a reasonable degree of level.  The [c]ourt finds that specific performance of the contract can and should be performed in this case.

* * *

Insofar as there is no credible way to determine the dollar value of the work [Biddle] is going to have to perform under the order of the [c]ourt, there is no way to determine whether the value of that work exceeds the amount of money damages [the Laskowskies] are found to owe [Biddle].  Since the [c]ourt cannot determine that the value of the work to be done by [Biddle] for the [Laskowskis] exceeds the damages [the Laskowskis] owe [Biddle] the [c]ourt finds that the order that [the Laskowskis] should pay [Biddle's] attorney fees should be confirmed.

* * *

The [c]ourt does, however, upon reconsideration of the amount of attorney fees awarded, and in light of the developments in the case since the original judgment was reversed, find that the amount awarded is unreasonably high and that the attorney fee award should be reduced.  The [c]ourt finds that a must more reasonable attorney fee is $30,000.00 and that the [c]ourt's judgment should be amended to reflect the reduction in attorney fee awarded [Biddle].

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that [Biddle] have and recover of and from [the Laskowskis], jointly and severally, the sum of $24,284 and attorney fees in the amount of $30,000.

* * *

7

> IT IS FURTHER ORDERED that [Biddle] finish the work the [c]ourt has ordered him to do or have done at his expense by May 31, 2011.

(Appellant's App. pp. 14-17).

The notice of appeal was filed on May 4, 2011 and Biddle died on September 4, 2011. His Estate was substituted as a party on February 15, 2012.[2] The court-ordered remedial work was never commenced.

The Estate now appeals and the Laskowskis cross-appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

APPEAL

Indiana Appellate Rule 46(A)(8) provides that the argument section of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]" It is well settled that we will not consider an appellant's assertion on appeal when he has not presented a cogent argument supported by authority and references to the record as required by the rules. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). "If we were to address such arguments, we would be forced to abdicate our role as an impartial tribunal and would instead become an advocate for one of the parties. *Id*.

The Estate's entire argument on appeal consists, *verbatim*, of:

---

[2] Pursuant to Indiana Appellate Rule 17(B), the death of any party on appeal shall not cause the appeal to abate. A successor party may be substituted for the deceased party.

8

Abbey Villas Development Corp. v. Site Contractors, Inc. (Ind. App. 1999)
(716 NE2d 91, 102, quoting Johnson v. Blankenship (Ind. App., 1997) 679
NE2d 505, 509-510, states:

> We only reverse the trial court's decision concerning attorney fees if
> there is a total lack of supporting evidence or the evidence is
> undisputed and leads solely to a contrary conclusion . . ."

(Appellant's Br. pp. 5-6).

Piecing together the Estate's claim from the summary of argument section and conclusion section of its appellate brief, it appears that the Estate disputes the trial court's decrease in its awarded attorney fees. However, the Estate's argument section clearly falls woefully short of the requirements of Indiana Appellate Rule 46(A)(8) and addressing its claim would force us to become an advocate rather than being an adjudicator. We refuse to do this. We conclude that the Estate waived its argument on appeal.

CROSS-APPEAL

I. *Contract Interpretation*

First, the Laskowskis contend that the trial court abused its discretion when it interpreted the provisions of the contract. Specifically, the Laskowskis argue that the agreement entered into with Biddle was a fixed price contract and any additions to the contract price would have to be agreed upon by the parties. Based on this principle, the Laskowskis maintain that trial court erred in awarding Biddle a total of $24,284 in contractual additions.

As a general rule, the construction or legal effect of a contract is a question of law to be determined by the court. *Zawistoski v. Gene B. Glick*, 727 N.E.2d 790, 792 (Ind.

9

Ct. App. 2000).  In reviewing questions of contract interpretation and construction upon appeal, we read the contract "as a whole when trying to ascertain the parties' intent, and we will make all attempts to construe the language in a contract so as to not render any words, phrases or terms ineffective or meaningless."  *Fisher v. Heymann*, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), *trans. denied*.  Further, we "must accept an interpretation of the contract that harmonizes its provisions, as opposed to one that causes the provisions to conflict."  *Id.* at 901.

Here, the contract between the Laskowskis and Biddle provided, in relevant part, that

> ALLOTTED COST BREAKDOWN
> This is a guide line on cost for the homeowner and the contractor, anything above the guidelines will have to be agreed upon by the homeowner and contractor.
>
> Job total
> $126,200.00
> At a hundred dollars a square foot, the breakdown is this:
> Living area $97,800.00 $81.23 per sq. foot
> Basement $18,400.00 $23.47 per sq. foot
> Garage $10,000.00 $18.94 per sq. foot
> This one hundred dollars per square foot is based on the breakdown.  This price can be lower upon the material chosen by the homeowner.

(Defendant's Exh. C).  Interpreting this provision, we agree with the trial court that while a fixed price was included in the contract, this amount was a guideline only and could fluctuate depending on what the parties agreed on during the construction phase of the project.

During the trial, the court heard testimony from Biddle and the Laskowskis as to what each party considered included within the guidelines and what each party

considered to be an addition to the agreement and whether it had been mutually agreed upon. By its order, the trial court credited Biddle's testimony over the Laskowski's. As we are not allowed to assess the credibility of the witnesses on appeal, we affirm the trial court's determination of the additional items above the contractual guidelines.

## II. *Specific Performance*

In their counterclaim the Laskowskis alleged that Biddle had delivered defective workmanship and had "failed to perform [the] work in a workmanlike manner" to the amount of $41,300. (Appellant's App. p. 13). In reviewing the argument, the trial court agreed that certain parts of the project were defective but instead of awarding a money judgment, the trial court ordered specific performance by Biddle as the appropriate remedy in the instant cause. On cross-appeal, the Laskowskis contend that specific performance is improper because damages are a more appropriate remedy by law in contracts for building or construction. Additionally, it should be noted that the trial court ordered specific performance by Biddle, who after this cause came before us, had passed away.

The grant of specific performance directs the performance of a contract according to, or substantially in accordance with, the precise terms agreed upon. *Kesler v. Marshall*, 792 N.E.2d 893, 896 (Ind. Ct. App. 2003). The decision whether to grant specific performance is a matter within the trial court's sound discretion. *Id.* Such judicial discretion is not arbitrary, but is governed by and must conform to the well-established rules of equity. *Id.* Because specific performance is an equitable remedy, the power of a court to compel specific performance is an extraordinary power. *Id.* As such,

11

the equitable remedy of specific performance is not available as a matter of right. *Id.* We will find an abuse of discretion where the trial court's decision is clearly against the reasonable deductions which may be drawn from the facts and the circumstances before the court. *Id.*

Our courts will not exercise equitable powers when an adequate remedy at law exists. *Id.* Where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law. *Id.* Although the general rule is that equity will not grant specific performance of contracts involving personal property, a well-recognized exception is in the case of personal property having a peculiar and unique value since damages at law would be inadequate. *Marion Trucking Co. v. Harwood Trucking*, 116 N.E.2d 636, 640 (Ind. Ct. App. 1954).

In its judgment and again in its Order on the parties' respective motions to correct error, the trial court agreed with the Laskowskis that certain work, as detailed in the trial court's Orders, had to be corrected. The trial court's rationale to order specific performance by Biddle to cure these deficiencies is noted in its judgment:

> Except for the last few weeks on the project, the Laskowskis raved about [Biddle's] workmanship and that of his employees and subcontractors. The only objections came when difficulties and differences arose over the final cost of the project. The [c]ourt finds that [Biddle] has the requisite skills and ability to finish the project in a good and workmanlike manner.

(Appellant's App. p. 30). In its Order addressing the parties' respective motion to correct error, the trial court concluded

> [The Laskowskis] have objected to the [c]ourt's order of specific performance. The [c]ourt did not want to send [the Laskowskis] away without a remedy. A money judgment is not an alternative. There is no

12

adequate remedy at law. Specific performance is available as a remedy. The work [Biddle] is to do, or have done under his supervision, is primarily in the nature of finishing the project, and correcting some of the errors in construction. There is no showing that he cannot do what needs to be done. Clearly the [Laskowskis] do not want him to do the work, but the [c]ourt finds that he should be allowed to do the work and that he should do it in a good and workmanlike manner. []

Further, the [c]ourt finds that the scope and detail of the work to be done is known by both [the Laskowskis] and [Biddle]. The work is straight forward, not particularly difficult nor complicated. [Biddle] has satisfactorily performed most of the work. Except for the matter of leveling of the floor of the first floor of the house the work is that of finishing up – largely that of completing a punch list.

For the foregoing reasons the [c]ourt finds that while the absence of the adjustable posts from the basement walls is newly discovered evidence, that in and of itself does not alter the [c]ourt's determination that the proper remedy for [the Laskowskis] is for [Biddle] to complete the work found by the [c]ourt necessary to be done, including bringing the first floor floor to a reasonable degree of level. The [c]ourt finds that specific performance of the contract can and should be performed in this case.

(Appellant's App. pp. 15-16). Clearly, the trial court based its grant of specific performance on services which have to be performed by Biddle himself because of his familiarity with the project.

In the vintage decision of *Ikerd v. Beavers*, 7 N.E. 326, 328 (Ind. 1886), our supreme court opined that

[t]he contract before us, it should be observed, too, is one of a class the specific performance of which will not be decreed. It is one which involved personal service of such a character that in order to its proper execution relations of peculiar confidence and esteem, if not affection, should prevail between the parties concerned. To undertake to enforce such a contract between parties mutually distrustful of each other would be productive of nothing but confusion and mischief.

13

Even though the Laskowskis might initially have been impressed with Biddle's workmanship, the case has been winding its way through the courts since 2006 and the current litigious stance of both parties indicates a mutual distrust and loss of respect which would only make specific performance more difficult to obtain. Furthermore, we note the traditional rationale underlying specific performance is not applicable here as there is nothing unique or peculiar to the contract before us that would render damages at law inadequate. *See Marion Trucking, Inc.*, 116 N.E.2d at 640. At the time of trial court's order, monetary damages were available and an appropriate remedy. *See Kesler*, 792 N.E.2d at 896. Moreover, because of Biddle's death, specific performance, as envisioned by the trial court, is no longer possible. Therefore, because a remedy at law is available and specific performance is no longer attainable, we remand to the trial court for determination of the monetary value of the deficiencies to be cured and imposition of a money judgment.

<u>CONCLUSION</u>

Based on the foregoing, we find that the Estate waived its argument with respect to attorney fees. On cross-appeal, we conclude that the trial court did not abuse its discretion when it interpreted the agreement between the parties, but since specific performance is no longer possible, we remand to the trial court for determination of a money judgment.

Affirmed in part, reversed in part, and remanded for further proceedings.

FRIEDLANDER, J. and MATHIAS, J. concur

14