## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 23 2020, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mario Garcia
Terry Tolliver
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Empire Auto Group, <br> *Appellant-Defendant/Counter-Plaintiff,* <br><br> v. <br><br> Gerald A. Whittaker, <br> *Appellee-Plaintiff/Counter-Defendant.* | September 23, 2020 <br><br> Court of Appeals Case No. 20A-SC-397 <br><br> Appeal from the Marion Small Claims Court <br><br> The Honorable Cheryl Rivera, Judge <br><br> Trial Court Cause No. 49K04-1911-SC-4607 |

**Tavitas, Judge.**

# Case Summary

Empire Auto Group ("Empire") appeals the small claims court's judgment in favor of Gerald A. Whittaker. We affirm.

# Issue

Empire raises two issues on appeal, which we consolidate and restate as: whether the small claims court properly entered judgment for Whittaker on his breach of contract claim and Empire's counterclaim.

# Facts

Empire operates an automobile dealership in Indianapolis. On Saturday, October 12, 2019, first-time car buyer Whittaker test-drove a used 2010 Dodge Challenger ("the vehicle") at Empire's dealership. The vehicle was "in good shape besides [the fact that] it had no headlights." Tr. Vol. II p. 5. Whittaker bought the vehicle "as-is" and executed a "Retail Installment Contract and Security Agreement[,]" under which Whittaker agreed to pay $25,969.36[1] for the vehicle. Empire's App. Vol. II p. 34; Exhibits Vol. I p. 9. Whittaker's monthly payment schedule under the installment contract was scheduled to commence on November 11, 2019.

---

[1] This sum was comprised of $13,138.88 in financed principal costs, $8,830.48 in finance charges, and Whittaker's $4,000.00 down payment, which was comprised of $2,500.00 in cash and a personal loan for $1,500.00 from Integrity Acceptance Corp.

[4] Whittaker also executed a "Buyer's Order", a "Buyers Guide", and a "Delivery Receipt[.]" Exhibits Vol. I pp. 6, 34, 36. Additionally, Whittaker executed a SecureOne vehicle service contract for $1,195.00 that provided vehicle warranty coverage for twelve months or 12,000 miles.

[5] Financing for Whittaker's vehicle through Western Funding Inc. ("Western"), was still pending when Whittaker drove the vehicle home without incident. The installment contract included no language regarding what would occur if Western denied Whittaker's financing application.

[6] The next day—Sunday, October 13, 2019—the vehicle began to make "knocking sounds" that "became worse the more [Whittaker] drove[,]" "until [the vehicle] became unable [sic] to drive." Tr. Vol. II p. 5. On Tuesday, October 15, 2019,[2] Whittaker contacted his Empire salesman, Ivan, who instructed Whittaker to have the vehicle towed to an auto repair shop.[3] When Whittaker retrieved the vehicle on Wednesday, October 16, 2019, however, the mechanical issues were not resolved. Whittaker again contacted Empire. Ivan urged Whittaker not to tell Western about the problems with the vehicle and stated that Empire "w[ould] take care of it [be]cause [Whittaker] got the service agreement." *Id*. at 6.

---

[2] Monday, October 14, 2018, was Columbus Day holiday, and it appears that Empire may have been closed.

[3] Whittaker paid the towing expense.

On Thursday, October 17, 2019, a Western representative called Whittaker to discuss the vehicle. Whittaker disclosed the mechanical problems to Western, and Western subsequently refused to finance the transaction due to the repair issues with the vehicle. The next day—Friday, October 18, 2019—Ivan instructed Whittaker to bring the vehicle to Empire's premises. Whittaker asked if Empire would repair the vehicle. Ivan responded that he would not repair the vehicle and further stated: "We don't want to do business which (sic) you anymore because you lied." *Id.* Whittaker then asked if Empire would refund his $4,000.00 down payment; Ivan agreed and instructed Whittaker to return the vehicle. That same day, Whittaker drove the vehicle to Empire's lot. Empire personnel asked to test drive the vehicle and "took the keys."[4] *Id.* Whittaker never regained possession, and Empire retained Whittaker's down payment. In all, Whittaker had possession of the vehicle for six days.

On Saturday, October 19, 2019, Empire wrote the following to Whittaker:

> We have your vehicle . . . because you failed to comply with the terms of our sales agreement. We plan to sell this vehicle. You can get this vehicle back before we sell it by paying the entire amount you owe (not just the past due payments) including our expenses incurred in the repossession process. This amount is currently $13,563.88 but may go up if our expenses go up.

---

[4] Once Whittaker realized that Empire intended to retain the keys and the vehicle, he contacted the police, who declined to get involved in a civil matter.

* * * * *

> If you do not redeem this vehicle we will sell this vehicle. . . . .
> We may sell this vehicle as soon as 10 days from the date of this
> notice.[5]

> The money we get from selling your vehicle (after paying our
> expenses) will reduce the amount you owe. If we get less money
> than you owe you will owe us the difference. If we get more
> money than you owe you will get the extra money, unless we
> must pay it to someone else. . . .

Empire's App. Vol. II p. 33.

[9] On November 1, 2019, Whittaker filed a notice of claim against Empire for breach of contract and sought $4,000.00 in damages. On November 8, 2019, Empire countersued, alleging Whittaker owed a repossession deficiency balance of $1,500.00.[6] *Id*. at 44. The small claims court conducted a bench trial on January 21, 2020. The next day, the small claims court entered judgment for Whittaker on Whittaker's complaint and awarded damages of $4,000.00, costs, and post-judgment interest. The small claims court also summarily entered judgment for Whittaker on Empire's counterclaim. Empire now appeals.

---

[5] Whittaker's redemption period was scheduled to end on October 29, 2019.

[6] Empire amended its counterclaim to correct a scrivener's error on December 13, 2019.

## Analysis

[10] Empire argues that the small claims court erred in entering judgment in favor of Whittaker. In reviewing a small claims judgment, we only set it aside if it is clearly erroneous. *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). We may not reweigh the evidence or reassess witness credibility; instead, we consider only the evidence and reasonable inferences therefrom that support the judgment. *Id.* We will affirm if a reasonable factfinder could conclude that the party bearing the burden of proof failed to carry that burden by establishing his claims by a preponderance of the evidence. *Id.*

[11] Notably, however, Whittaker has not filed an appellee's brief. When an appellee fails to submit a brief, we need not develop his arguments; rather, we apply a less stringent standard of review and will reverse if the appellant establishes prima facie error. *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). Prima facie error is error "at first sight, on first appearance, or on the face of it." *Solms v. Solms*, 982 N.E.2d 1, 2 (Ind. Ct. App. 2012).

[12] The parties' dispute here pertains to interpretation of various written agreements. Interpretation and construction of contract provisions are questions of law and are reviewed de novo. *Panther Brands, LLC v. Indy Racing League, LLC*, 126 N.E.3d 898, 904 (Ind. Ct. App. 2019), *trans. denied.* We review each contract as a whole, ascertaining the parties' intent and making every attempt to construe the contract's language "so as not to render any

words, phrases, or terms ineffective or meaningless." *Id.* (quoting *Fischer v. Heymann*, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), *trans. denied*).

## I. Empire's Counterclaim

We begin by addressing Empire's counterclaim. Empire argues the small claims court erred in entering judgment in favor of Whittaker because "Whittaker . . . agreed to make payments[,]" "failed to do so[,]" and, thereby, breached the installment contract. Empire's Br. p. 9. Empire did not prevail on its counterclaim and, therefore, appeals from a negative judgment.

> A negative judgment is a judgment entered against the party who bore the burden of proof at trial. We will not reverse a negative judgment unless it is contrary to law. On review, we consider the evidence and reasonable inferences in the light most favorable to the appellee. "A party appealing a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court."

*Universal Auto, LLC v. Murray*, 149 N.E.3d 639, 642 (Ind. Ct. App. 2020) (internal citations omitted).

In *Universal Auto,* Murray bought a used vehicle "as is" from Universal Auto ("Universal") in mid-February 2018.[7] Murray executed an installment contract; Murray also executed a service agreement that provided for vehicle

---

[7] We observe that counsel for Empire represented Universal Auto in the above-cited matter. Further, a "Heather Padilla" served as Universal Auto's finance manager in *Universal Auto*, while a "Heather Padiola" was Empire's finance manager in the instant matter.

protection coverage, for which he paid approximately $1,500.00. Murray's monthly payments were scheduled to begin on March 17, 2018. Shortly after Murray took possession of the vehicle, the vehicle's engine failed. Murray took the vehicle to an auto repair shop of Universal's choosing, where the engine replacement cost would be borne by Universal. After Universal paid for the engine replacement, the new engine malfunctioned. Universal instructed Murray to take the vehicle back to the auto repair shop; Murray complied. Universal then withdrew its payment to the auto repair shop for the engine replacement. As a result, a mechanic's lien attached to the vehicle, and the auto repair shop would not release it to Murray. Universal informed Murray that, if he failed to make scheduled payments on the sales contract, he would be in breach. In a March 7, 2018 letter to Murray, Universal stated "it had repossessed [Murray's] vehicle and would resell it if [Murray] did not . . . pay[ ] the full contract balance . . . within ten days." *Id.* at 641.

[15] Murray brought a small claims action seeking damages for breach of contract. Universal filed a counterclaim for damages, including repossession, cleaning, and attorney fees. After a bench trial, the small claims court entered judgment for Murray on both claims, finding that Universal breached the service contract by failing to repair the vehicle and awarding damages; and entering judgment in Murray's favor on Universal's counterclaim.

[16] On appeal, this Court rejected Universal's argument that Murray defaulted on the installment contract. We observed, inter alia, that: (1) Universal's repossession letter and discharge of lien forms, which were premised on

Murray's alleged default, were dated March 7, 2018; and (2) Murray was not obligated to make payments until March 17, 2018. As we opined:

> . . . instead of having to make a standard monthly payment on March 17, Murray was now facing the resale of his vehicle if he could not come up with $15,750 by March 17.

> In short, Murray had not defaulted on the sales contract when [UA] repossessed his vehicle. *One simply cannot be in default for nonpayment of a monthly bill that has not yet come due.*

*Id.* at 643 (emphasis added).

[17] The record here reveals that Whittaker purchased the vehicle from Empire on October 12, 2019. Although Whittaker's first payment was not due until November 11, 2019, Empire repossessed the vehicle on October 18, 2019. *See* Tr. Vol. II p. 22 (Whittaker's testimony: "I'm still tryin' to figure out why exactly . . . the car [was] repossessed when I only had it for six days. No payment[ ] was due . . . ."). As this Court found in *Universal Auto*, Whittaker could not default on the installment contract before his payment obligation commenced and, accordingly, did not breach the contract before Empire repossessed the vehicle. Thus, the small claims court did not err in entering judgment in favor of Whittaker on Empire's counterclaim. Empire has not carried its burden to demonstrate prima facie error regarding its counterclaim.

## II.    Whittaker's Complaint

## A. Disclaimer of Warranties

Next, we address Whittaker's breach of contract claim.  Empire argues that the small claims court erred in finding Empire was liable to Whittaker because Whittaker "purchased the vehicle 'As Is' from Empire"; and "Empire [ ] specifically disclaimed any express or implied warranties[.]"  Empire's Br. p. 9.

Indiana Code Section 26-1-2-314, regarding the implied warranty of merchantability, provides:

> (1) Unless excluded or modified (IC 26-1-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

The closely-related Indiana Code Section 26-1-2-316(3)(a) provides, in part:

> *unless the circumstances indicate otherwise*, all implied warranties are excluded by expressions like 'as is', 'with all faults', or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . .

(Emphasis added).

Again, *Universal Auto* is instructive.  In that case, we found—regarding an "as is" vehicle purchase—that implied warranties were not excluded.  Universal argued, "the trial court erred in finding that [Universal] owed a contractual duty to Murray concerning any repairs" to the vehicle.  *Universal Auto*, 149 N.E.2d at

643. Specifically, Universal argued that Murray bought the vehicle "as is" and signed a delivery receipt, wherein Murray: (1) agreed that the "vehicle is in acceptable working order"; (2) "release[d Universal] from all responsibility . . . for future repairs needed or claims that may arise"; (3) acknowledged that he had the "opportunity to test drive and research . . . the vehicle"; and (4) agreed "that it [wa]s FULLY [Murray's] responsibility to maintain the vehicle at [Murray's] expense and [that Murray] d[id] not hold [Universal] responsible in any manner . . . ." *Id.*

[21]     In rejecting Universal's contention that it owed no contractual duty to repair, this Court read the delivery receipt provisions "in conjunction with other documents executed as part of the sale" and reasoned:

> . . .[T]he bill of sale reads in pertinent part, "*Unless Seller . . . enters into a service contract* within 90 days of this contract, this vehicle is being sold "AS IS – WITH ALL FAULTS."  The installment contract includes nearly identical language. . . . ("Unless we . . . enter into a service contract within 90 days from the date of this contract, we make no warranties  . . . on this vehicle") . . . .  This language expressly indicates that the existence of an enforceable service agreement will act as an exception to the "as-is" disclaimer of warranties.

*Id.* (emphasis in original).

[22]     In the instant case, Whittaker executed various documents when he purchased the vehicle.  Among those documents were: (1) the "Delivery Receipt[,]" which provided: "By signing this, I am stating that this vehicle is in acceptable working order and I release [Empire] from all responsibility. . . .  I will not hold

[Empire] responsible for future repairs needed or claims that may arise with the vehicle[,]" Empire's App. Vol. II p. 35; and (2) the "Buyer's Order" form, which provided in part:

> This vehicle is sold "AS-IS" - WITHOUT WARRANTY, EITHER EXPRESS OR IMPLIED AND [Whittaker] IS SOLELY RESPONSIBLE FOR COST OF ANY REPAIRS TO THE VEHICLE. [Empire] expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. . . .

*Id*. at 11. Additionally, however, Whittaker executed a "Buyers Guide" form, which provided in pertinent part: "AS IS – NO DEALER WARRANTY[.] The Dealer does not provide a warranty for any repairs after sale"; and "A service contract on this vehicle is available for an extra charge*. . . . . If you buy a service contract within 90 days of your purchase of this vehicle, implied warranties under your state's laws may give you additional rights.*" *Id*. (emphasis added).

[23]     It is undisputed that Whittaker executed various documents wherein Empire purported to disclaim express and implied warranties. When, however, the Delivery Receipt and Buyer's Order form are read in conjunction with the "Buyers Guide[,]" an exception to the "as is" language attaches due to Whittaker's purchase of the ServiceOne contract. As in *Universal Auto*, "the existence of an enforceable service agreement . . . act[s] as an exception to the 'as-is' disclaimer of warranties." *Universal Auto*, 149 N.E.2d at 643.

Accordingly, Empire has not demonstrated prima facie error regarding its claim that it owed no contractual duty to repair the vehicle.[8]

### B. Service Agreement

[24] Empire also argues that it owed Whittaker no contractual duty to repair the vehicle because Empire was not a party to the SecureOne vehicle protection service agreement that Empire sold to Whittaker. Empire argues that, pursuant to the service agreement, "[a]ny repairs that were to be made to the vehicle were the responsibility of SecureOne, the third-party provider of the Vehicle Service Contract, not Empire." *See* Empire's Br. p. 9.

[25] Universal made an identical argument in *Universal Auto*. This Court, however, found the argument to be unavailing because "Universal facilitated the formation, fee collection, and execution of the service contract[,]" among other things. *See Universal Auto*, 149 N.E.2d at 644. Such is also the case here.

[26] The record reveals that, at the time of purchase, Whittaker executed the SecureOne vehicle service contract on Empire's premises. Empire's installment

---

[8] The record reveals that Whittaker did not have the vehicle inspected before purchase because he was satisfied with having a service agreement. Empire does not advance an argument here regarding Indiana Code Section 26-1-2-316(3)(b), which provides:

> where the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods *there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him*[.]

Emphasis added. Accordingly, we do not address this aspect of the statute.

contract reflects Whittaker's purchase of the service contract as well as Empire's collection of Whittaker's $1,195.00 payment therefor. *See* Empire's App. Vol. II p. 28 (notating "Service Contract . . . ." in the "Itemization of Amount Financed" section of the installment contract).

[27] Also, during the bench trial, Whittaker testified that, two days after he purchased the vehicle, the engine began "knocking" and that Empire "told [Whittaker] to have it towed to a shop." Tr. Vol. II pp. 5, 6. We can reasonably infer from Empire's initial payment to the auto repair shop and Empire's failure to assert otherwise in its brief that Whittaker took the vehicle to an auto repair shop of Empire's choosing. Moreover, when additional problems arose with the vehicle, Empire's employee, Ivan, told Whittaker that Empire "w[ould] take care of [the vehicle repairs] cause [Whittaker] got the service agreement." *Id.*

[28] Under these circumstances, we are not moved by Empire's contention that it was not a party to the service agreement with Whittaker. Empire's active role in the creation, funding, and execution of the service contract, its interaction with the auto repair shop, and Ivan's statement above, regarding the service contract, indicate otherwise and support the judgment. Based on the foregoing, the small claims court did not err in concluding that Empire owed a contractual duty to Whittaker regarding the service contract. Empire has not demonstrated prima facie error in this regard.

# Conclusion

[29] Because Whittaker did not breach the contract, Empire was required to return the vehicle and pay for the repairs *or* to return Whittaker's $4,000.00 down payment. Empire did neither and, thereby, breached its duty to Whittaker. The small claims court did not err in entering judgment for Whittaker on Whittaker's breach of contract claim and Empire's counterclaim. We affirm.

[30] Affirmed.

Kirsch, J., and Pyle, J., concur.